EDWIN A. LOMBARD, Judge.
|2The City of New Orleans appeals the decision of the Civil Service Commission that granted the appeal of New Orleans Police Department (NOPD) Captain Gary Gremillion, reversing the fifteen-day disciplinary suspension imposed by the appointing authority (the NOPD) for his undisputed violation of a police department rule. After review of the record in light of the applicable law and arguments of the parties, we reverse the ruling of the Civil Service Commission.

Relevant Facts and Procedural History

In 2008, the Civil Rights Division of the Justice Department and the Federal Bureau of Investigation (FBI) began an investigation into the police shooting death of Henry Glover and the subsequent alleged cover-up which occurred in the aftermath of Hurricane Katrina. This investigation eventually resulted in the indictment[1] and highly publicized trial of five New Orleans Police Department (NOPD) officers, including David Warren (the officer who shot Glover) |Rand Robert Italiano,[2] Warren’s supervisor at the time of the shooting. Evidence adduced at the federal trial revealed that in the midst of the FBI investigation, Mr. Italiano requested and received a copy of the NOPD incident report at issue in the case from Captain Gremillion. In December 2010, after receiving notification of this matter in the form of trial transcripts, the NOPD Public Integrity Bureau (PIB) opened an investigation into the allegations of wrongdoing by Captain Gremillion.
In May 2009, when the FBI was investigating the Glover shooting, Captain Grem-illion was Commander of the NOPD Homicide Division and Mr. Italiano was a retired NOPD officer working as an investigator in the Louisiana State Attorney General’s office. After being interviewed by the FBI, Mr. Italiano met his former subordinate, Captain Gremillion, for lunch. Stating that he “heard a report had surfaced about an incident in the 4th District involving David Warren,” Mr. Italiano requested a copy of the report from Captain Gremillion. That afternoon or the next day (but before Mr. Italiano’s subsequent interview with the FBI), Captain Gremil-lion faxed a copy of the NOPD incident report about the (Glover) shooting incident involving Officer Warren, signed by “Lt. Italiano,” to Mr. Italiano at the state A.G.’s office. It is undisputed that this document was unrelated to the course and scope of Mr. Italiano’s employment with the state A.G.’s office.
In the course of the PIB administrative investigation, Commander John Thomas interviewed Captain Gremillion who affirmed that he faxed the report to Mr. Italiano without notifying his supervising officer or obtaining the authorization to do so. As a result of his investigation, Commander Thomas concluded that Captain Gremillion had violated NOPD Rule 6: Official | Information, paragraph 1, Security Records, in providing Mr. Italiano with a copy of the report without following proper protocol for the release of a public record.
In April 2011, a hearing was held before a committee of three officers (including Deputy Superintendent Kirk Bouyelas), *604 providing Captain Gremillion with the opportunity to present mitigating facts or an explanation of his conduct that was admittedly contrary to police department rules. The committee determined that Captain Gremillion failed to justify his violation and, accordingly, on June 20, 2011, the committee recommended a fifteen day suspension based on its finding that Captain Gremillion’s actions qualified as a Category 2 (moderate) violation of departmental rules. By letter of June 21, 2011, Superintendent of Police Ronald W. Serpas accepted the recommendation and notified Captain Gremillion of the disciplinary action.
Captain Gremillion appealed the decision to the Civil Service Commission and on May 10, 2012, Civil Service Commission Hearing Examiner Jay Alan Ginsberg heard testimony by Commander Thomas and Deputy Superintendent Bouyelas (who, at the time of the hearing, was Chief of the NOPD Investigations and Support Bureau), as well as Captain Gremillion. Commander Thomas and Chief Bouyelas testified as to the investigation into the matter. Captain Gremillion admitted that he was well aware of the departmental rule “[b]eing a commander in the Public Integrity Bureau,” but chose to ignore it in light of Mr. Italiano’s good standing as a former officer and because the document was a public record easily obtained by paying a $25.00 fee. Captain Gremillion emphasized, however, that when he faxed the document, he had no knowledge that Mr. Italiano was a subject of the FBI investigation rather than merely a witness.
| /-The hearing examiner concluded that while the Appointing Authority “arguably” established a “technical violation of an internal rule,” it “failed to establish by a preponderance of evidence that the violation impacted the efficient operation of the department.” Accordingly, the hearing examiner recommended that Captain Gremillion’s appeal be granted. The Civil Service Commission adopted this recommendation, granting Captain Gremillion’s appeal and ordering the Appointing Authority to pay him “fifteen days of back pay and all emoluments of employment.”

Discussion

The City of New Orleans appeals, asserting that Civil Service Commission decision was arbitrary, capricious, and contrary to the established standard of review. We agree.
The Commission has authority to “hear and decide” disciplinary cases, which includes the authority to reverse a penalty, see La. Const, art. X, § 12; Pope v. New Orleans Police Dept., 2004-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4, but it is the appointing authority that is charged with the operation of its department and, accordingly, it is within the appointing authority’s discretion to discipline an employee for sufficient cause. The Commission is not charged with disciplining employees and its authority to reduce or reverse a penalty can only be exercised if there is insufficient cause for imposing the penalty. See Pope, 2004-1888, pp. 5-6, 903 So.2d at 4. In other words, civil service employees are only protected against discipline without cause. See Cornelius v. Dept. of Police, 2007-1257, p. 7 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724. Thus, unless there was insufficient cause for the appointing authority to impose the discipline, the penalty must stand.
| (¡Disciplinary action against a civil service employee will be deemed arbitrary and capricious if there was not a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. Newman v. Department of Fire, 425 So.2d 753, 754 (La.1983). Legal cause for discipline ex *605 ists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged and the burden is on the appointing authority to prove the impairment by a preponderance of the evidence. Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4 Cir.1990). This requirement that the employee’s conduct “impair” the efficiency of his employing agency has been misconstrued, as in this case, to require submission of specific testimony or evidence to show how the action of the civil service employee at issue specifically impaired the efficient operation of his or her employer. See Regis v. Dept. of Police, 2012-1692 (La.App. 4 Cir. 4/17/2013), 115 So.3d 638 (officer disciplined for violating La.Rev. Stat. 32:361.1(B) requiring the NOPD to present evidence that an officer’s dereliction bore a real and substantial relationship to the efficient operation of the NOPD), reversed, 2013-1124 (La.6/28/13), 121 So.3d 665, 2013 WL 3766564 (violation of window tinting statute sufficient evidence to support discipline imposed by appointing authority).
 In this case, it is undisputed that Mr. Italiano could have obtained a copy of the report by following the appropriate procedures, ie., a public record request or purchase from the Record Room for $25.00 fee. However, because Mr. Italiano was no longer an active member of the NOPD or involved in an active investigation of the case on behalf of a public agency, Captain Gremillion’s action in simply faxing it to him constituted a clear violation of a departmental security rule. Moreover, Captain Gremillion acknowledged that he was well aware of the |7rule but decided to ignore it because Mr. Italiano was a former NOPD officer. Although Captain Gremillion’s decision to ignore protocol on behalf of his former commanding officer is, perhaps, understandable, it remains undisputed that Captain Gremillion violated a departmental rule. Moreover, this particular violation occurred in the midst of the highly charged atmosphere wherein the NOPD was being investigated not only for the shooting death of Henry Glover but for the alleged police collusion in covering up the incident. In addition, as a commanding officer, Captain Gremillion is a role model for his subordinates such that his explicit decision to ignore departmental rules carries egregious consequences. Accordingly, the appointing authority clearly had sufficient cause to impose a moderate penalty, in this case a fifteen day suspension. Moreover, the Civil Service Commission decision to overturn the appointing authority’s decision based on the appointing authority’s failure to produce specific evidence that Captain Gremillion’s rule violation impaired the efficient operation of the NOPD is contrary to Louisiana Supreme Court jurisprudence and, as such, clear error. See Regis, supra. As the Court observed in Regis, “since the public puts its trust in the police department as a guardian of its safety, it is essential the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust.” Regis, 2013-1124, p. 1, 121 So.3d at 666.

Conclusion

The judgment of the Civil Service Commission granting Captain Gremillion’s appeal is reversed. The penalty imposed by the appointing authority is affirmed.
REVERSED.

. At the grand jury hearing leading to the indictment. Captain Gremillion testified before the Grand Jury that he provided Mr. Italiano with a copy of the police incident report involving the shooting by Officer Warren.

. Mr. Italiano was charged with obstructing justice for allegedly putting together a misleading and false report about the Warren/Glover shooting incident. Mr. Italiano was acquitted of the charges against him.