ROSEMARY LEDET, Judge.
LThis is a civil service commission case. Officers James Neyrey, David Abbott, and Reginald Smith (the “Officers”) appeal their suspensions from the New Orleans Police Department (“NOPD”) for violating the Appointing Authority’s — the NOPD’s — internal regulation prohibiting receiving cash payments, including checks made payable to cash, for paid details. The Officers were all disciplined for accepting payment in the form of a check made payable to cash for motorcycle escorts that they worked. In the Officers’ consolidated appeal,[1] the Civil Service Commission of the City of New Orleans (“CSC”) determined that the Appointing Authority did not abuse its discretion in finding that the Officers violated the internal regulation prohibiting accepting cash payments for paid details.
On appeal, the Officers assert that the CSC erred in two respects. First, they contend that the-CSC erred because the NOPD did not prove a real and substantial ^relationship between the alleged infractions and an adverse impact on the efficient operation of the public service. Second, they contend that the CSC erred by not finding that the NOPD’s request for extensions pursuant to La. R.S. 40:2531(B)(7) and Civil Service Rule IX § 1.4 was untimely made, resulting in an administrative investigation exceeding the *194 sixty days allowed by La. R.S. 40:2531(B)(7). They thus contend that the resulting discipline should have been declared absolutely null and dismissed pursuant to La. R.S. 40:2531(C).
Given the Officers knew or should have known about the internal regulation prohibiting accepting cash payment for paid details coupled with their acknowledged failure to .adhere to the regulation, we affirm the CSC’s finding that the Appointing Authority acted properly and within its discretion.
FACTUAL AND PROCEDURAL BACKGROUND
At the time of the actions that form the basis for the complaints, the Officers were employed by the NOPD as police officers with permanent status and were assigned to the NOPD’s Traffic Division. On July 19, 2011, and August 25, 2011, the NOPD’s Traffic Division, received requests from Blaine Kern, Inc. (Blaine Kern?) for motorcycle escorts to move parade floats. Officer Neyrey worked both paid details; Officers Abbott and Smith worked only the August 25, 2011 paid detail. The Officers were all paid by checks, each in the amount of $100, made payable to cash. The Officers each endorsed their check by signing their name on the back, and each of the Officers deposited their check into their respective bank account.
|,.¡On September 7, 2011, NOPD Superintendent Roñal Serpas sent an email addressed to “All Traffic Officers & Traffic Supervisors,” which read as follows:
In August 2010, Dept, members were notified via General Order 828, effective September 1, 2010, that under no circumstances should an employee solicit or accept cash payment for any work performed in a paid detail capacity.[2] On May 16, 2011, Dept, members were reminded of the prohibition against cash payments for paid details and the prohibition clarified that checks made payable to cash was interpreted as a form of cash payment and prohibited under policy. Further, it was explained that checks in payment for paid details should only be made payable using the legal name of the member working the paid detail.[3]
The email posed five questions regarding compliance with the above-referenced paid detail regulation and instructed the recipients to respond by the following day.
On October 21, 2011, a DI-1 form— labeled “Initiation of a Formal Disciplinary Investigation” — was prepared for each of the two Blaine Kern paid details at issue— July 19, 2011 (Public Integrity Bureau (“PIB”) No. 2011-1194R); and August 25, 2011, (PIB No. 2011-1198-R). On November 2, 2011, the NOPD requested extensions of time to conduct its investigations in these two matters pursuant to La. R.S. 40:2531(B)(7), which the CSC subsequently granted.
*195 Sergeant Darryl Watson, who was assigned to the PIB, conducted the investigations of these two matters. The PIB determined that on August 25, 2011 |4(PIB No. 2011-1198-R) the Officers worked a paid detail for Blaine Kern for which the Officers received as payment a check made payable to cash. The PIB further determined that on July 19, 2011 (PIB No. 2011-1194-R) Officer Neyrey worked another paid detail for Blaine Kern for which he received as payment a check made payable to cash. During the investigations, the Officers admitted that they understood the departmental rules and regulations prohibiting cash payments or checks made to cash for paid details. The Officers also admitted that they accepted the checks from Blaine Kern, cashed the checks made payable to cash, and received payment.
In December 2011, Sergeant Watson issued to each of the Officers a “Notice to Accused Law Enforcement Officer Under Investigation of a Pre-Disciplinary Hearing or a Determination of an Unfounded or Unsustained Complaint” (“Notice to Accused”).[4] Each Notice to Accused included the following language:
The internal disciplinary investigation into the allegation(s) made against you ... on October [2]1, 2011,[5] has been completed. The alleged violation(s) and the investigator s recommended disposition(s) are written below. If the disposition of any alleged violation is SUSTAINED, your disciplinary hearing date will be February 15, 2012. If there is a determination of an Unfounded or Un-sustained complaint no disciplinary hearing will be conducted.
As to each of the Officers, the investigator’s recommended disposition was that there was a sustained violation of Rule 4: Performance of Duty, Paragraph 2 — Instructions from an Authoritative Source to wit Chapter 22.8, Paid Details,[6] and | RGeneral Order 828. No hearing was held on February 15, 2012, the date listed in the Notice to Accused.
On April 23, 2012, Deputy Superintendent Darryl Albert, with the Field Operations Bureau, issued to each of the Officers a “Disciplinary Hearing Notification,” informing them of the scheduled hearing date of May 8, 2012.
On May 8, 2012, a hearing was held before Deputy Superintendent Albert. Following the hearing, Deputy Superintendent Albert found, as to each of the Officers, there was a sustained violation. As to Officers Abbott and Smith, Deputy Superintendent Albert recommended a two-day suspension; as to Officer Neyrey he *196 recommended a one-day suspension for PIB No. 2011-1194 and a ten-day suspension for PIB No. 2011-1198.
On August 13, 2012, Superintendent Serpas issued a disciplinary letter to each of the Officers, finalizing the disciplinary actions. • Superintendent Serpas concurred in Deputy Superintendent Albert’s finding of sustained violations and adopted his recommended penalties. The Officers then sought review with the CSC.
IfiOn April 11, 2013, a hearing was held before the CSC on the Officers’ consolidated appeal. By agreement of the parties, the hearing was conducted primarily through stipulations and the introduction of documents. As the CSC noted in its decision, the parties agreed to the following four stipulations:
1. If Assistant Superintendent Darryl Albert had testified, his testimony would be the same as his testimony in the matter of David Tregre v. Dept. of Police, Docket No. 8030.[7]
2. The Appellants [the Officers] were paid with checks made payable to cash for serving as motorcycle escorts. The checks were endorsed by the [0]fficers and deposited into their personal bank accounts.
3. All exhibits received as evidence are authentic.
4. The Appointing Authority agreed to reduce [Officer] Neyrey’s ten day suspension ([PIB No.] 2011-1198-R) to a one day suspension.
Although the Officers admitted receiving and negotiating the checks made payable to cash as payment for the Blaine Kern details outlined in the disciplinary letters, they contended before the CSC that there was no evidence that the alleged derelictions bore any relationship to an impairment of the efficient operation of the department. They further contended that the investigations in the consolidated cases were not concluded within sixty or one hundred and twenty days and thus were not in compliance with the minimum standards set forth in La. R.S. 40:2531(B)(7).
The CSC rejected both of the Officers’ contentions. First, it found that the Appointing Authority established by a preponderance of the evidence that it disciplined the Officers for legal cause; the CSC reasoned that “[t]he Appellants |7[the Officers] knew or should have known that the acceptance of a check made payable to cash was violative of internal rules.” Second, the CSC found that the Appointing Authority complied with La. R.S. 40:2531(B)(7); the CSC reasoned that “[t]he investigation began with the initiation of the DI-l’s, which are formal and written complaints. The investigations ended when the Appellants received their notices of pre-disciplinary hearing forms, which sufficiently alerted the Appellants that a disciplinary hearing would occur and that the investigation phase was concluded.” Accordingly, the CSC dismissed the Officers’ appeal. The Officers’ consolidated appeal to this court followed.
STANDARD OF REVIEW AND APPLICABLE LEGAL PRINCIPLES
In Regis v. Department of Police, 12-1048 (La.App. 4 Cir. 12/12/12), 107 So.3d 790, we summarized the governing *197 standard of review and applicable legal principles as follows:
• An employer cannot subject a permanent classified civil service employee to disciplinary action except for cause expressed in writing. La. Const. Art. X, § 8(A); Walters v. Dep’t of Police, 454 So.2d 106, 112 (La.1984).
• Cause for discipline of an employee exists whenever the employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Dep’t of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990).
• “The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause.” Whitaker v. New Orleans Police Dep’t, 03-0512, p. 5 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 575.
• The employee may appeal from such a disciplinary action to the Commission. On appeal, the Commission has a duty to decide independently from the facts presented whether the appointing authority had good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed was commensurate with the infraction. Walters, 454 So.2d at 113.
• “The authority to reduce a penalty can only be exercised if there is insufficient cause ” Whitaker, 03-0512 at p. 4, 863 So.2d at 575 (citing Branighan v. Dep’t of Police, 362 So.2d 1221, 1223 (La.App. 4 Cir.1978)). Further, a legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. Branighan, 362 So.2d at 1221. The Commission may not merely substitute its judgment for the appointing authority’s judgment. Whitaker, 03-0512 at p. 5, 863 So.2d at 576.
• On appeal, the standard of review is established by the constitutional rule that the Commission’s decision is subject to review on any question of law or fact. La. Const, art. X, § 12. A multifaceted standard of appellate review applies. First, as in other civil matters, deference must be given to the Commission’s factual findings, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission’s determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission’s decision unless it is arbitrary, capricious, or characterized by an abuse of discretion. Bannister [v. Department of Streets ], 95-404 at p. 8, 666 So.2d [641] at 647 [ (La.1996) ]. Arbitrary or capricious means there is no rational basis for the action taken by the Commission. Id.
Regis, 12-1043 at pp. 4-5, 107 So.3d at 793 (quoting Harris v. Department of Fire, 08-0514, pp. 10-11 (La.App. 4 Cir. 7/16/08), 990 So.2d 54, 61-62, and citing Williams v. Department of Police, 08-0465, pp. 6-7 (La.App. 4 Cir. 10/22/08), 996 So.2d 1142, 1145-46, and Bankston v. Department of Fire, 09-1016, p. 7 (La.App. 4 Cir. 11/18/09), 26 So.3d 815, 821-22).
In applying these standards, an appellate court must make two determinations: (1) whether the appointing authority had good or lawful cause for taking the disciplinary action, and (2) whether the punishment the appointing authority imposed is commensurate with the offense. Harris, 08-0514 at p. 11, 990 So.2d at 62 (citing Staehle v. Department of Police, *198 98-0216, p. 3 (La.App. 4 Cir. 11/18/98), 723 So.2d 1031, 1033)..
DISCUSSION
As noted at the outset, the Officers raise the following two issues on appeal: (i) whether the NOPD had legal cause to discipline them, and (ii) whether the IflNOPD conducted a timely investigation in compliance with La. R.S. 40:2531(B)(7). We separately address each issue.

Legal cause

To establish that it had legal cause, the Appointing Authority (here the NOPD) was required to prove two factors: (i) that the complained of conduct occurred, and (ii) that the complained of conduct impaired the efficiency of the department. Harris, 08-0514 at p. 11, 990 So.2d at 62. In this case, the complained of conduct was the Officers accepting payment in the form of checks made payable to cash for motorcycle escorts that they worked. The Officers concede the first element — that the complained of conduct occurred. The Officers, however, dispute the second element — that their conduct impaired the department’s efficiency. Citing Judge Bonin’s dissent in Adams v. Department of Police, 08-0468 (La.App. 4 Cir. 2/12/09), 7 So.3d 763, the Officers contend that there is no evidence that the complained of conduct “bore a real and substantial relationship to the efficient operation of the public service.”
A similar issue was raised by the appellant-officer in Adams, supra. In that case, the appellant-officer contended that the CSC failed to demonstrate that her admitted failure to sign the Beat Roll Book, as directed by her sergeant, impaired the efficient operation of the public service. Rejecting the contention, we noted that the testimony established that “[r]equiring the officers to sign the book was a departmental policy implemented to facilitate accountability and for payroll purposes.” Adams, 08-0468 at p. 4, 7 So.3d at 765. We further noted that “[c]onsidering the nature of the profession of a police officer, it is incumbent on these professionals to be precise and to follow all direct orders, whether simple or complex, in order to demonstrate their discipline and commitment to the police |inforce.” Adams, 08-0468 at p. 5, 7 So.3d at 765. Given the appellant-officer’s violation of the policy, we held that legal cause was established.
Similarly, the Louisiana Supreme Court stated in Regis v. Department of Police, 13-1124, p. 1 (La.6/28/13), 121 So.3d 665, 666, that “since the public puts its trust in the police department as a guardian of its safety, it is essential the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust.” Id. In Regis, the Supreme Court reversed this court’s holding in Regis v. Department of Police, 12-1692 (La.App. 4 Cir. 4/17/2013), 115 So.3d 638, that in order for an officer to be disciplined for violating La. R.S. 32:361.1(B), the window tinting statute, the NOPD was required to present evidence that the officer’s dereliction bore a real and substantial relationship to the efficient operation of the NOPD. The Supreme Court held that a violation of the window tinting statute was sufficient evidence to establish legal cause and thus to support the discipline imposed by the NOPD.
Citing the Louisiana Supreme Court’s decision in Regis, supra, this court recently noted that the “requirement that the employee’s conduct ‘impair’ the efficiency of his employing agency has been misconstrued ... to require submission of specific testimony or evidence to show how the action of the civil service employee at issue specifically impaired the efficient operation of his or her employer.” Gremillion v. *199 Department of Police, 13-0347 at p. 6 (La.App. 4 Cir. 10/2/13), 126 So.3d 601, 605. Applying these precepts, we concluded in the Gremillion case that “the Civil Service Commission decision to overturn the appointing authority’s decision based on the appointing authority’s failure to. produce specific evidence that Captain Gremillion’s rule violation impaired the efficient operation of the NOPD [was] contrary to Louisiana Supreme Court |njurisprudence and, as such, clear error.” 13-0347 at p. 7, 126 So.3d at 605 (citing Regis, supra).
In Tregre v. Department of Police, 13-1365 (La.App. 4 Cir. 4/30/14), 139 So.3d 1034, this court, as the Officers acknowledge, recently held that there was legal cause to discipline an officer for violating the same rules and regulations at issue in this case prohibiting accepting cash payments, including checks made payable to cash, for paid details.[8] In so doing, this court reasoned as follows:
In order for the Appointing Authority to have legal cause to discipline, Officer Tregre’s violation must impair the efficiency of the public service in which he is engaged. Pope [v. New Orleans Police Department ], 04-1888, p. 6 [ (La.App. 4 Cir. 4/20/05) ], 903 So.2d [1] at 5. At the August 2012 hearing, Assistant Superintendent Albert testified that cash payments are more difficult to track and link to the officer who performed the detail. Thus, the policy prohibiting cash payments including checks made payable to cash wa's established to avoid the “look of impropriety” and “to keep a better record of payment that officers receive while working paid details.” The Commission found the Appointing Authority “is justified in enforcing a legitimate rule that protects the integrity of its detail policy. Checks made payable to cash can be cashed by anyone, while a check issued to a specific individual is more restrictive.” The Department of Police establishes certain policies and regulations to assure the efficient operation of the public service. Failing to uphold and discipline those in violation of the rules impairs the integrity and operation of the department. Therefore, we agree with the Commission that the Appointing Authority sustained its burden of proof that legal cause existed and discipline was warranted.
Tregre, 13-1365 at pp. 7-8, 139 So.3d at 1038.
| ^Essentially, the Officers are requesting that this court reconsider its holding in Tregre. In support, the Officers note that the off-duty employer (Blaine Kern) decided to pay them with checks made payable to cash. They additionally note that all the paid details (escorts) were properly documented and authorized through the *200 procedure put in place by the NOPD. The Officers stress the lack of any allegations of impropriety with regard to the scheduling, working, or conducting of the off-duty motorcycle escorts. The Officers further stress that they were in substantial compliance with all other off-duty motorcycle escort policies and regulations.
The Officers additionally contend that receiving cheeks made payable to cash is distinguishable from receiving actual currency as payment for a detail. They suggest that a check made payable to cash provides a sufficient paper trail to establish that they received legitimate payment for the work they performed. According to the Officers, the Appointing Authority’s contention there is no paper trail created by checks made payable to cash is belied by the fact that the Officers were all identified by the NOPD as officers who accepted checks made payable to cash. The NOPD obtained the checks made payable to cash from the employer, Blaine Kern, and used those checks in the course of these investigations. Although the Officers acknowledged there was plenty of testimony in this case as to what might adversely affect the efficient operation of the department, they contend there was no evidence of any actual impairment. The Officers thus contend that the discipline imposed on them is arbitrary and capricious.
Rejecting the Officers’ contentions, the CSC stated that “[cjheeks made payable to cash can be cashed by anyone, while a check issued to a specific individual is more restrictive.” The CSC thus found the Appointing Authority | ^established by a preponderance of the evidence that it disciplined the Officers for legal cause. We agree.
As noted above, the parties stipulated that if Assistant Superintendent Albert had testified in this case, his testimony would be the same as his testimony in the Tregre case. At the hearing in the Tregre case, Assistant Superintendent Albert testified that although the detail was logged in and -the officer was authorized to work the detail and followed some of the rules pertaining to the department allowing the privilege of working paid details, the officer failed to do the final part or element of the process — not to accept cash payment. By accepting cash payment, the officer failed to follow the entire process of being authorized to work a privileged detail.
Assistant Superintendent Albert explained that NOPD is required to track all paid details worked by its officers to ensure their compliance with its paid detail policies. Continuing, he testified that the rule prohibiting cash payments for paid details was promulgated to facilitate better record keeping of the payments officers receive while working paid details, to assure that all such payments are properly documented, and to deter circumventing the policies regarding paid details. He explained that checks made payable to cash are difficult to track since it is hard, and in some cases impossible, to decipher an officer’s signature on the back of a check made payable to cash. As a result, it is difficult, if not impossible, to link the officers that actually performed the paid detail. He pointed out that if a check is written out to the name of the individual officer who worked the paid detail, the department can better manage paid details because the off-duty employer will have a paper trail establishing the officer who it paid.
114Assistant Superintendent Albert further testified in the Tregre case that the purpose of the rale was to eliminate the appearance of impropriety created by officers accepting cash, whether by currency or by cheek. The appearance of impropriety, he explained, was that if an officer *201 is able to negotiate and accept cash, then the deal between the officer and the off-duty employer is not managed by a paper trail of payment. Explaining the Department’s interest, he pointed out that adopting the rule, requiring a paper trail, was one of the steps the Department put into place in reforming its entire detail policy. This step was put into place to show that the Department was taking an aggressive stance on managing paid details.
We find that the record in this case supports the CSC’s finding that there was legal cause to discipline the Officers for violating the NOPD’s rule prohibiting accepting cash payments, including checks made payable to cash, for paid details. We thus agree with the CSC’s finding that the Appointing Authority was justified in enforcing a legitimate rule to protect the integrity of its paid detail policy.

Timeliness of investigation

The second issue the Officers raise on appeal is the timeliness of the NOPD’s investigation. This issue has the following two components: (i) the initiation of the investigations, and (ii) the completion of the investigations. Both of these components are governed by La. R.S. 40:2531(B)(7).[9] We separately address each component.

\Ka) Initiation of the investigations

The statutory provision, La. R.S. 40:2531(B)(7), does not' expressly address when an investigation is initiated; rather, it simply states that “[w]hen a formal, written complaint is made against any police employee or law enforcement officer, the ... chief of police ... shall initiate an investigation within fourteen days of the date the complaint is made.” La. R.S. 40:2531(B)(7). In this case, the relevance of determining the initiation date of the investigations is two-fold. First, it determines whether the Appointing Authority’s request for extensions of time was timely made. Second, it determines whether the Appointing Authority completed the investigations timely, which is the subject of the second component of the Officers’ argument.
Civil Service Rule IX, § 1.4 provides that any request for an extension of time under La. R.S. 40:2531(B)(7) must be submitted within thirty days of the date of the initiation of the investigation. The Officers contend that the investigations were initiated when Superintendent Serpas sent an email on September 7, 2011 with specific questions related to compliance with the paid detail rule prohibiting accepting cash payments. As a result, the Officers contend that the investigations were initiated *202 before the NOPD’s initiation of the two DI-1 forms on October 21, 2011. The Officers contend that since the investigations were | ^initiated on September 7, 2001, the NOPD’s request for extensions made on November 2, 2011 was untimely made.
Rejecting this same contention, the CSC reasoned as follows:
However, La. R.S. 40:2531(B)(7) references a formal and written complaint made against a law enforcement officer as the starting point of an investigation for purposes of the statute. Initial inquiries by email regarding compliance with a rule is not a formal investigation. The purpose of the inquiry was to determine whether a formal investigation was warranted. The Appointing Authority, as required by the statute, initiated a DI-1, which is a formal investigation once it determined that an investigation was necessary. Based upon the DI-1 initiation date, the November 2, 201[1], requests for extensions of time were within thirty days of the initiation of the investigation and thus compliant with Civil Service rules.
On appeal, the Officers contend that the CSC erred in failing to find that the September 7, 2011 email signaled-the initiation of the investigations. In support of their position, the Officers cite La. Atty Gen. Op. No. 07-0073, which states that an investigation is initiated when an authorized person begins to make inquiry or collect evidence concerning a situation with an officer where the end result is “with a view to possible disciplinary action, demotion or dismissal.’ ” This test has been referred to as a broad “systematic inquiry” test. Nunnery v. City of Bossier, 822 F.Supp.2d 620, 632 (W.D.La.2011).
The Officers point out that the September 7, 2011 email contained specific questions narrowly related to the Traffic Division personnel’s compliance with General Order 828 and Superintendent Serpas’ May 16, 2011 email. According to the Officers, the ensuing investigations were furthered not only by the personnel’s responses to the email, but also by the Compliance Division’s interviews of off-duty detail employers and collection of evidence based on those interviews |17(cancelled checks). The Compliance Division then forwarded the evidence and completed DI-1 forms to the PIB. The PIB then initiated the DI-1 forms on October 21, 2011. Given this chronology of events, the Officers contend that the end result of September 7, 2011 email was disciplinary action against them. It follows, the Officers contend, that under the broad systematic inquiry test the investigations were initiated on September 7, 2011; hence, the NOPD’s request for extensions, submitted on November 2, 2011, was untimely made. •
The NOPD counters that the CSC correctly found the NOPD’s DI-1 forms, initiated on October 21, 2011, which identified the accused officers and their alleged violations, were the “formal written complaints” referenced in the statute, La. R.S. 40:2531(B)(7). Accordingly, the NOPD contends that the investigations were initiated on October 21, 2011, as that was the date that the DI-1 forms were initiated, signaling the opening of the formal investigations. In support, the NOPD cites Cornelius v. Department of Police, 09-1459 (La.App. 4 Cir. 6/9/10), 41 So.3d 617, for the proposition that a preliminary inquiry does not constitute the initiation of a formal disciplinary investigation. We agree.
The CSC properly found that the NOPD’s DI-1 forms were the “formal written complaints” referenced in the statute, which signaled the initiation of the investigations. Indeed, this court consistently has held that the NOPD initiates its investigation under La. R.S. 40:2531(B)(7) *203 on the date it initiates the DI-1 form.[10] |1RThe Officers’ reliance on the broad systematic inquiry test set forth in La. Atty Gen. Op. No. 07-0073 is misplaced. The jurisprudence has recognized that “the Opinions of the Attorney General of Louisiana are merely persuasive authority, they are not binding precedent in Louisiana.” Nunnery, 822 F.Supp.2d at 632 (citing Bergeron v. City of Kenner, 10-229, p. 7 (La.App. 5 Cir. 10/26/10), 51 So.3d 143, 147); see also In re Shiplov, 05-0498, p. 12 (La.App. 4 Cir. 10/18/06), 945 So.2d 52, 60 (citing City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170, p. 6, n. 11 (La.3/2/99), 739 So.2d 748, 753). We thus find the Officers’ contention that the investigations were initiated on September 7, 2011 unpersuasive; instead, we find, as the NOPD contends and the CSC found, that the investigations were initiated on October 21, 2011 and that the Appointing Authority’s November 2, 2011 request for extensions of time was timely made.

b) Completion of the investigations

The completion of the investigation is defined by statute as occurring “upon notice to the police employee or law enforcement officer under investigation of a pre-diseiplinary hearing or a determination of an unfounded or unsustained complaint.” La. R.S. 40:2631(B)(7). The Officers note that the statute, when read together with Civil Service Rule IX, § 1.4 regarding requests for an extension of time, requires that administrative investigations be completed within sixty days or, if an extension is granted, one hundred and twenty days. They further note that La. R.S.40:2531 (C) provides that any disciplinary action taken without strict | ^compliance with the minimum standards provided for in the statute is an absolute nullity.
Regardless of whether the investigations commenced on September 7, 2011, as the Officers contend, or October 21, 2011, as we found above, the Officers contend that the investigations were not completed within the minimum statutory time limitations. The gist of their contention is that the investigations were not completed until they were served with the Disciplinary Hearing Notification in April 2012 — over one hundred and twenty days after the sending of the email on September 7, 2011, and the initiating of the DI-1 forms on October 21, 2011.
In addressing this argument, the CSC noted that the Officers’ contention was that the December 2011 Notice to Accused did not meet the minimum statutory requirements for two reasons. First, the Officers contended that the Notice to Accused issued to each of the Officers did not satisfy Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, *204 84 L.Ed.2d 494 (1985), because the notices failed to provide them with sufficient notice and an opportunity to respond to all of the charges that might form the basis for disciplinary action. Second, the Officers relied on this court’s recent decision, Mulvey v. Department of Police, 12-1041 (La.App. 4 Cir. 1/30/13), 108 So.3d 891, writ denied, 13-0484 (La.4/5/13), 110 So.3d 591, which held that “a notice that does not timely alert an officer as to whether a disciplinary hearing is definitely required is deficient, dilatory and fails to sufficiently alert an officer of the statute of his or her investigation.” Mulvey, 12-1041 at p. 10, 108 So.3d at 897.
Finding the Officers’ reliance on Loud-ermill misplaced, the CSC reasoned that “Loudermill applies to terminations. The Officers are appealing suspensions, where the notice requirements do not apply.” Likewise, the CSC found the 1 ^Officers’ reliance on Mulvey misplaced; the CSC explained that Mulvey is distinguishable for the following reasons:
In Mulvey, the notice received by the Appellant [the Officers] provided no date for a pre-disciplinary hearing. In the instant case, the [December 2012] notice provided [a February 15, 2012][11] disciplinary hearing date. While the record suggests that the hearing did not occur on the original date stated, it satisfied the concerns expressed in Mulvey. It alerted the Appellant that a disciplinary hearing was required thus signaling the end of the disciplinary investigation.
On appeal to this court, the Officers make substantially the same two arguments and cite the same two cases. First, the Officers contend that “[n]one of the notices contain a summary of the Appointing Authority’s evidence against the [0]ffi-cers,” as required by Loudermill. We find this argument unpersuasive. As the CSC noted, Loudermill applies to terminations. The Officers were not terminated; they were suspended.
Second, the Officers contend that this case is substantially similar to Mulvey. As in Mulvey, the Officers note that the disposition notice — the Notice to Accused' — utilized the same conditional “if ..., then” language that this court found objectionable in Mulvey. Moreover, the disposition notices only contained the investigator’s recommended disposition, not the final disposition. Although after Mul-vey the NOPD began including in the disposition notices a specific date for a disciplinary hearing, the Officers contend that the inclusion of such an arbitrary date for a possible hearing does not cure the defects this court found in Mulvey resulting from the conditional nature of the notice. Indeed, the Officers stress that no hearing was held on the daté set forth in the December 2011 disposition notices — February 15, 2012. Finally, the Officers stress that this court Lfin Mulvey found that it was the Disciplinary Hearing Notification that signaled the completion of the investigation. The Officers note that the Disciplinary Hearing Notifications in this case were not issued until April 2012.
The same arguments the Officers make in this ease regarding the application of our holding in Mulvey were made by the appellant-officer in Hurst v. Department of Police, 14-0119 (La.App. 4 Cir. 7/23/14), 146 So.3d 857. Finding those arguments unpersuasive, we noted that Mulvey “involved an officer who received a notice that the investigation was complete; however, the notice further stated that if a disciplinary hearing was required, the officer would receive further notification.” Hurst, 14-0119 at p. 7, 146 So.3d at 861 (emphasis in original). Continuing, we found that the *205 appellant-officer’s argument that the Notice to Accused did not signal the timely completion of the investigation unpersuasive; in so doing, we reasoned as follows:
Our review of the document, which Officer Hurst argues was not proper notice that the investigation against him was complete and that he was to appear at a disciplinary hearing, indicates that Officer Hurst’s argument is without merit. The document is entitled “Notice to Accused Law Enforcement Officer Under Investigation of a Pre — Disciplinary Hearing OR a Determination of an Unfounded or Unsustained Complaint.” (emphasis added.) The first paragraph informs the recipient that the investigation has been completed. The next section of the document contains the investigator’s recommended dispositions, and in this case, clearly states that violations of departmental rules were sustained. Last, the document concludes with a statement that the superintendent or his designee is the final approving authority. Thus, the sustained violations are subject to the Superintendent’s final approval, explaining the term “recommended dispositions.” We agree with the Civil Service Commission that the notice received by Officer Hurst on June 27, 2011, was sufficient to provide meaningful notice that the charges against him had been sustained and that a pre-disciplinary hearing was scheduled in compliance with La. R.S. 40:2531 B(7).
Hurst, 14-0119 at pp. 7-8, 146 So.3d at 861.
|22In this case, as in Hurst, the December 2011 Notice to Accused sent to each of the Officers informed them that the complaint was sustained, that the investigation was complete, and provided a hearing date. Thus, Mulvey is distinguishable from this case in that it involved a notice that did not include a hearing date. As in Hurst, we find the Officers’ argument that the December 2011 Notice to Accused did not signal the timely completion of the investigation is unpersuasive. Likewise, we note that the same argument the Officers make regarding the inclusion in the notice of an arbitrary hearing date was rejected by this court in Hurst. Although the hearing was not held on the originally scheduled date set forth in the December 2011 notices (February 15, 2012), the hearing was subsequently rescheduled to May 2012; and the Officers were properly notified of that hearing date by the notices that were sent to them in April 2012.
In sum, we conclude that the December 2011 Notice to Accused that each of the Officers received was sufficient to provide meaningful notice that the charges against them had been sustained and that a pre-disciplinary hearing had been scheduled in compliance with La. R.S. 40:2531(B)(7). We thus conclude that the Appointing Authority complied with the minimum standards set forth in La. R.S. 40:2531(B)(7) for timely completing the investigations.
Considering the facts and circumstances of this case, we cannot conclude the CSC acted arbitrarily or capriciously in upholding the decision of the Appointing Authority.

DECREE

For the foregoing reasons, the decision of the Civil Service Commission of the City of New Orleans is affirmed.
AFFIRMED.

. Sergeant Andrew Palumbo also was found to have violated the same internal regulation. Before the CSC, the appeals by Sergeant Pa-lumbo and the Officers were consolidated. Sergeant Palumbo, however, failed to file a brief in this court. As a result, this court dismissed Sergeant Palumbo’s appeal as abandoned. Only the Officers' consolidated appeal is before us.

. Chapter 22.8: Paid Details, paragraph 37, and General Order 828 provides:
Employees are responsible for negotiating compensation for details with the detail employer. Under no circumstances shall the employee solicit or accept a cash payment for any work performed in a paid detail capacity.

. The reminder was issued in the form of an email from Superintendent Serpas that was sent to "NopdAll” on May 16, 2011. The email reminded all members authorized to work paid details of the prohibition against cash payment for paid details; and it added that "[c]hecks made payable to 'cash' can only be interpreted as a form of cash payment, which is prohibited under the policy. To clarify, checks should only be made payable using the legal name of the member working the paid detail.”

. These notices were issued on December 28 and 29, 2011.

. These notices erroneously list October 31, 2011, as the date the DI-1 forms were initiated.

. Rule 4: Performance of Duty, paragraph 2-Instructions from an Authoritative Source states:
An employee shall professionally, promptly, and fully abide by or execute instructions issued from any authoritative source, including any order relayed from a superior by an employee of the same or lesser rank. If the instructions are reasonably believed to be in conflict with the Rules and Procedures of the Department or other issued instructions, this fact shall respectfully be made known to the issuing authority. If the issuing authority elects to insist upon execution of the instructions which are reasonably believed to be in conflict with Departmental Rules and Procedures, the employee receiving the instructions shall have the right to request and is entitled to receive, IMMEDIATELY, said instructions in writing, except in cases of emergency as determined by the supervisor. The issuing authority shall be held responsible should any conflict materialize; however, no instructions shall be issued or executed which are in violation of law. (Emphasis added).

. The disciplinary actions against the Officers, at issue in this case, were for the same alleged violations of the same rules and regulations prohibiting accepting cash payments for paid details as the CSC recently addressed in a separate matter involving Officer David Tregre. This court recently affirmed the CSC's decision upholding the two-day suspension that was imposed on Officer Tregre in that matter. Tregre v. Department of Police, 13-1365 (La.App. 4 Cir. 4/30/14), 139 So.3d 1034.

. This court, on several occasions, has upheld findings of legal cause for disciplining an officer for violating various rules and regulations relating to paid details. See Patin v. Department of Police, 12-1693 (La.App. 4 Cir. 6/26/13), 159 So.3d 476 (affirming suspension of officers for violating rule prohibiting formation of an limited liability corporation ("LLC”) for purposes of coordinating off-duty paid details and finding that "appellants’ formation of LLC’s for purposes of coordinating off-duty details bears a real and substantial relationship to the efficient operation of the department”); Waguespack v. Department of Police, 12-1691 (La.App. 4 Cir. 6/26/13), 119 So.3d 976 (affirming suspension for officer’s violation of rule prohibiting formation of an LLC for purposes of coordinating off-duty details); Howard v. Department of Police, 466 So.2d 699 (La.App. 4th Cir.1985) (affirming suspension for working a paid detail at a bank during department work hours); Penn v. New Orleans Police Dep’t, 01-1240 (La.App. 4 Cir. 3/6/02), 812 So.2d 847, 851 (affirming suspension for failing to complete "New Orleans Police Paid Detail/ Outside Employment Authorization Form #21” as required by police regulation before working a paid detail).

. La. R.S. 40:2531(B)(7) provides as follows:
When a formal, written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation.... If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall 'grant an extension of up to sixty days.... The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or un-sustained complaint. Nothing in this Paragraph shall limit any investigation of alleged criminal activity.

. See Young v. Department of Police, 13-1596, p. 1, n. 2 (La.App. 4 Cir. 6/25/14), 152 So.3d 193, 194, n. 2 (noting that "DI forms appear to be documents that the NOPD uses internally relating to discipline and to commemorate and/or inform a police officer of allegations relating to misbehavior or alleged inappropriate acts or actions” and that “[a] DI-1 form ... is 'used to initiate a formal disciplinary investigation' ”); Williams v. Department of Police, 08-0465, p. 4 (La.App. 4 Cir. 10/22/08), 996 So.2d 1142, 1144; Jones v. Department of Police, 11-0571, p. 1. n. 1 (La.App. 4 Cir. 8/24/11), 72 So.3d 467, 469 (noting that “DI-1 appears to be a form used to initiate a formal disciplinary investigation”); Bell v. Department of Police, 13-1529, p. 8, n. 6 (La.App. 4 Cir. 5/21/14), 141 So.3d 871, 876 (noting that Form DI-1 evidences the existence of a “formal” investigation, rather than an informal one); Robinson v. Department of Police, 12-1039, p. 6 (La.App. 4 Cir. 1/16/13), 106 So.3d 1272, 1275; Cornelius v. Department of Police, 09-1459, pp. 5-6 (La.App. 4 Cir. 6/9/10), 41 So.3d 617, 621 (distinguishing form DI-1, a formal investigation, from form DI-3, an informal investigation).

. The CSC’s opinion contains an incorrect date for the notice and the hearing.