Judge Rosemary Ledet
hThis is a civil service case. The Appointing Authority, the New Orleans Recreation , Development. Commission *167 (“NORDC”), appeals the August 18, 2016 decision of the City of New Orleans. Civil Service Commission (the “Commission”). In its appeal, NORDC raises the following two issues: (i) the timeliness of the appeal filed by the employee, Corey, Green, of his termination; and (ii) the sufficiency of NORDC’s evidence to meet its burden of establishing legal cause for the sanctions it imposed on Mr. Green — a thirty-day emergency suspension and termination.[1] For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On June 3, 2007, NORDC hired Mr. Green. At all relevant times, NORDC employed Mr. Green as a Recreation Center Manager assigned to the Behrman Recreation Center in New Orleans, Louisiana.[2] On May 15, 2013, NORDC placed [,Mr. Green on a two week (a ten calendar day) suspension — the 10-Day Suspension — for numerous performance issues.[3] The 10-Day Suspension was from May 15, 2013 to May 28, 2013; Mr. Green was to return to work on May 29, 2013. On that date, however, NORDC placed Mr. Green on a thirty-day emergency suspension (the “30-Day Emergency Suspension”). On that same date, NORDC issued a Notice of Disciplinary Action, which stated the following reason for the 30-Day Emergency Suspension (the “30-Day Notice”):
It has been determined that during the term of [the 10-Day Suspension] you have done the following:
• Entered the Behrman Recreation Center;
• Utilized the facility and allowed other individuals to use the facility; and
• Improperly collected monies from these persons/teams.
On May 30, 2013, Mr. Green appealed the 10-Day Suspension; this appeal was assigned Docket No. 8176. On the appeal form, Mr. Green listed his address as 842 LeBoeuf Street, New Orleans; Louisiana (the “LeBoeuf Street Address”).
On June 6, 2013, NORDC issued a notice of pre-termination hearing to be held on June 14, 2013 (the “Pre-Termination Notice”). The Pre-Termination Notice stated the following:
On May 29, 2013, you were placed on emergency suspension and specifically informed that you were not to enter Behrman Recreation Center or any other NORDC facility during your suspension.
laNORDC has determined that you have disregarded that direction and while on suspension you have continued to. utilize Behrman Gymnasium, conduct unauthorized structured basketball games,' and allowed the collection of fees for the usage of the facility.
*168 On June 5, 2013, NORDC hand delivered to Mr. Green both the Pre-Termi-nation Notice and the 30-Day Notice.[4] NORDC also mailed letters including both notices by regular and certified mail to Mr. Green; all the letters were addressed to 2700 Valentine Court, New Orleans, Louisiana (the “Valentine Court Address”). None of the letters were returned undelivered. The return receipt, green cards that NORDC received for the two letters it sent to that address by certified mail were signed by someone other than Mr. Green.
On June 10, 2013, Mr. Green appealed the 30-Day Emergency Suspension. This appeal was assigned Docket No. 8179. On the appeal form, Mr. Green checked off not only “Suspended,” but also “Dismissed (Fired).” In addition, he attached to the appeal form copies of both the 30-Day Notice and the Pre-Termination Notice. On the appeal form, he again listed the LeBoeuf Street Address.
|4On June 14, 2013, the pre-termination hearing was held. Mr. Green failed to attend. Although an attempt was made to contact him by telephone before the hearing commenced, this attempt was unsuccessful.[5] Following the hearing, NORDC decided to terminate Mr. Green.
On June 17, 2013, NORDC issued a Notice of Termination to Mr. Green (the “Termination Notice”). NORDC mailed letters including the Termination Notice by both regular and certified mail to the Valentine Court Address. The Termination Notice included the following detailed summary of the factual basis for the termination:
On May 15, 2013 you were placed on disciplinary suspension for two weeks [ten calendar days] due to numerous performance issues. ... When you were informed of this suspension by COO [Chief Operations Officer] Mary-Jo Webster, you were also directed to return all keys to Behrman Center that were in your possession. This direction was reiterated over the next two weeks by Shawn Wyatt [Mr. Green’s supervisor] and Jerry Smith [Chief Program Officer], by email and numerous phone calls, and the keys were never returned.
On May 25th, 2013, NORDC CEO [Chief Executive Officer] Victor Richard went to the Behrman Recreation Center unannounced and found an unauthorized *169 full court adult basketball game underway with two referees and the Rec Center scoreboard in use. Players informed Mr. Richard that you organized the games and had been on premises overseeing the activities but had stepped out briefly. Further investigation confirmed that you have managed an AAU [Amateur Athletic Union] basketball team and organized non-NORDC related league play in the Behrman Recreation Center, during your suspension.
On May 29, 2013 you were placed on emergency suspension [for thirty days] due to your conduct during your disei-plinary | ¿¡suspension ... In the letter notifying you of this suspension, you were specifically directed not to enter the Behrman Recreation Center or any other NORDC facility during this suspension.
On June 5th, 2013, NORDC Chief Program Officer Jerry Smith went to the Behrman Recreation Center and found you present while unauthorized adult league play was occurring on the basketball court. Mr. Smith presented you with copies of both letters of suspension (5/29) and notice of your pre-termination letter scheduling the hearing for June 14th, 2013 and had an NOPD officer escort you out of the premises.
NORDC has determined that you disregarded specific direction and while on suspension you continued to utilize Behrman Gymnasium and both allowed and managed unauthorized usage of the gymnasium. You also collected money from individuals using the gym without permission or authority.
NORDC and City policy forbids private unauthorized usage of City property, and forbids a City employee from unauthorized collection of fees. We have determined that your repeated violations of NORDC policy and direction warrant termination, and therefore effective Friday, June 14th, 2013 your employment with the City of New Orleans is terminated.
On October 23, 2013, NORDC filed a motion for summary disposition of Mr. Green’s appeal of his termination in Docket No. 8179. In its motion, NORDC contended that Mr. Green’s June 10, 2013, appeal of his termination, which did not occur until June 14, 2013, was premature. NORDC further contended that the Pre-Termination Notice, a copy of which was attached to the appeal form, was not a disciplinary action and thus was not ap-pealable.
On November 18, 2013, the Commission granted NORDC’s motion for summary disposition, finding the appeal of the termination premature by four days. On that same date, Mr. Green filed another appeal challenging his termination. This appeal was assigned Docket No. 8244. On the appeal form, Mr. Green once again listed the LeBoeuf Street Address. In response, NORDC filed a second motion for summary disposition seeking to have Mr. Green’s appeal of his termination in Docket No. 8244 dismissed as untimely. Opposing the motion for |6summary disposition, Mr. Green contended that the Termination Notice was not provided to him until October 23, 2013. He noted that the address to which NORDC sent the June 17, 2013, Termination Notice was not his correct address.
Addressing the second motion for summary disposition, the Commission, in its August 15, 2014 order (the “Order”), reiterated its ruling that Mr. Green’s appeal in Docket No. 8179 was premature; it stated:
An employee cannot appeal a disciplinary action that has not yet transpired. The appeal must, at a minimum, be contemporaneous with the depriva *170 tion and not later than the time prescribed by Rule II, Section 4.8[6] and Rule IX, Section 1.3.[7]
As to Mr. Green’s November 18, 2013, appeal of his termination, the Commission noted that both the Pre-Termination Notice and the Termination Notice were sent to Mr. Green’s last address of record. The Commission further noted that this address differed from the address on his appeal forms.
In its Order, the Commission adopted the reasoning in Lewis v. Louisiana State University-Baton Rouge Campus, 08-2592 (La. App. 1 Cir. 6/12/09) (unpub.), 2009 WL 2486878. In Lewis, the First Circuit held that the employer’s use of the address maintained in the employee’s personnel record failed to comply with due process requirements given the employer had actual knowledge that the employee was incarcerated. In so holding, the First Circuit reasoned that an employer must act in good faith in providing notice to an employee.
^Deferring a decision on the NORDC’s second motion for summary disposition, the Commission remanded for an eviden-tiary hearing. In its Order, the Commission stated the following:
All three appeals are consolidated for hearing. However, the sole issue to be considered in the case of Docket No. 8244 is the issue of the Appellant’s change of address, and the hearing Officer shall receive evidence directly related to the question of the change of address, including the manner in which Appellant gave notice of same to the Appointing Authority and the Appointing Authority’s USPS [United States Postal Service] ‘return receipts’ for the letters it sent.
On January 7, 2015, this court denied NORDC’s writ application seeking review of the Order — the Commission’s August 15, 2014, ruling. Green v. New Orleans Recreation Dep’t, 14-1319 (La. App. 4 Cir. 8/15/14) (unpub.). Based on the record before us, we found no error in the Commission’s ruling remanding the matter and directing the hearing officer to receive further evidence on the issue of Corey Green’s change of address. Id.
On May 6, 2015, a hearing was held before the Hearing Examiner on Mr. Green’s three consolidated appeals. At the hearing, the NORDC called the following four witnesses: (1) Victor Richard, NORDC’s Director or CEO; (2) Mary-Jo Webster, NORDC’s Deputy Director or COO; (3) Shawn Wyatt, NORDC’s Director of Recreation Centers and Mr. Green’s supervisor; and (4) Deborah Calderon, NORDC’s Human Resources or Personnel Administrator. Mr. Green testified on his own behalf.
On July 25, 2015, the Hearing Examiner issued a report to the Commission. The Hearing Examiner found that NORDC met its burden of proof and established that Mr. Green was disciplined for legal cause in each of the three disciplinary actions. Given NORDC prevailed on the merits, the Hearing Examiner stated that the issue of whether Mr. Green’s appeal in *171 Docket No. 8244 was timely was | «“somewhat moot.” Nonetheless, the Hearing Examiner complied with the Commission’s instructions and made a record regarding the untimeliness of that appeal.
On August 18, 2015, the Commission, contrary to the Hearing Examiner’s recommendation, rendered a decision making the following two pertinent findings: (i) Mr. Green’s appeal of his termination in Docket No. 8244 was timely; and (ii) NORDC failed to meet its burden of proof as to legal cause with respect to two of the three sanctions it imposed on Mr. Green— the 30-Day Emergency Suspension and the termination.[8] The Commission thus overturned those sanctions and directed NORDC to reinstate Mr. Green with full back pay and emoluments of employment. From the Commission’s decision, NORDC appeals.
LEGAL PRECEPTS AND STANDARD OF REVIEW
The governing legal precepts that apply in civil service cases are well-settled; they are as follows:
• An employer cannot subject a permanent classified civil service employee to disciplinary action except for cause expressed in writing.[9]
• Cause for discipline of an employee exists whenever the employee’s conduct impairs the efficiency of the public service in which, the employee is engaged.
In* “The appointing authority is charged with the operation of his or her department and it is within his.or her discretion to discipline an employee for ■sufficient cause,” ■
• The employee may appeal from such a disciplinary action to the Commission. On appeal, the Commission has a duty to decide independently from the facts presented whether the appointing authority had good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed was commensurate with the infraction.
• “The authority to reduce a penalty can only be exercised if there is insufficient cause.” Further, a legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. The Commission may not merely substitute its judgment for the appointing authority’s judgment.
• On appeal, the standard of review is established by the constitutional rule that the Commission’s decision is subject to review on any question of law or fact.[10]
Abbott v. New Orleans Police Dep’t, 14-0993, pp. 7-8 (La.App. 4 Cir. 2/11/16), 165 So.3d 191, 196-98 (citing Regis v. Dep’t of *172 Police, 12-1043 (La.App. 4 Cir. 12/12/12), 107 So.3d 790).
A multifaceted standard of appellate review applies in civil service cases. Aucoin v. Dep’t of Police, 16-0287, pp. 3-4 (La.App. 4 Cir. 3/29/17), — So.3d —, —, 2017 WL 1164939 at *2 (citing Muhammad v. New Orleans Police Dep’t., 00-1034, p. 4 (La.App. 4 Cir. 7/11/01), 791 So.2d 788, 790). As we noted in Aucoin, the standard is as follows:
When reviewing the Commission’s findings of fact, the appellate court must apply the clearly wrong or manifestly erroneous standard. However, when judging the Commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the reviewing court should not modify the Commission’s order unless it is arbitrary, capricious or characterized by abuse of discretion. J^Therefore, the appropriate standard of appellate review of actions by the Civil Service Commission is to determine whether the conclusion reached by the Commission is arbitrary or capricious. As in other civil matters, deference should be given on appellate review to the factual conclusions of the Commission. It is only when this court finds that the Commission’s actions were arbitrary or capricious that it can disturb the Commission’s judgment.
Id. (internal citations omitted).
DISCUSSION
Although presented as five assignments of error, NORDC essentially asserts two issues: (i) timeliness of the appeal of the termination in Docket No. 8244; and (ii) legal cause for the 30-Day Emergency Suspension and the termination, which were based upon the same conduct. We separately address each issue.

Timeliness of appeal

NORDC’s argument regarding the timeliness of Mr. Green’s appeal of the termination has three parts. First, NORDC contends that the Commission ignored the following record evidence establishing the sufficiency of its notice to Mr. Green:
• Multiple records from Mr. Green’s personnel file confirmed that the only address he ever provided to NORDC was the Valentine Court Address;
• All NORDC notices were mailed to Mr. Green at the Valentine Court Address;
• NORDC’s Pre-Termination Notice, which was hand delivered to Mr. Green, had the Valentine Court Address on it; and
• NORDC’s Pre-Termination Notice was also sent by United States certified and regular mail to Mr. Green at the Valentine Court Address; and a green card for the certified mail was signed for receipt by “Brenda Green.” [11]
InGiven the above facts, NORDC cites the presumption that a letter sent using the United States mail is received by the recipient — the “mailbox” presumption. See Nolan v. Mabray, 10-0373, p. 9 (La. 11/30/10), 51 So.3d 665, 671 (holding that “the issue of mailing is a factual issue to be decided by the trial court”).[12] NORDC con *173 tends that Mr. Green failed to offer any proof to rebut the “mailbox” presumption.
Second, NORDC contends that Mr. Green’s November 18, 2013 appeal of his termination was untimely and in violation of the Civil Service rules. Citing Civil Service Rule II, § 4.3, NORDC contends that Mr. Green’s appeal was required to be received in the Civil Service Department on or before July 17, 2013 — thirty calendar days from June 17, 2013, the date of the Termination Notice.
Third, NORDC contends that the Lewis case, cited by the Commission, is distinguishable. Unlike the employer in Lewis, NORDC contends that it had no knowledge of any address for Mr. Green other than the one address that he provided to them — the Valentine Court Address. NORDC points out that the appeal form used by the Civil Service Department (the “Department”) on which Mr. Green listed a different address — the LeBoeuf Street Address — was not provided to it; rather, the appeal form was retained in the Department’s records. NORDC thus contends that it lacked knowledge that Mr. Green provided a new and different address when he filed his appeal with the Department.
| ^Agreeing with NORDC, the Hearing Examiner stated the following in his report:
In the Lewis case, the First Circuit found that the disciplinary letter mailed to the Appellant did not comport with due process because the Appointing Authority “had actual knowledge that Lewis was not at the address to which it mailed the notice.” Lewis, 2008 CA 2592, at p. 8. Such is not the case here.
On the contrary, Ms. Calderon, the Personnel Director at NORDC, testified that all of the records in the Appellant’s Personnel File and the Personnel database have as the Appellant’s address 2700 Valentine Court, New Orleans, 70121, which address also matched the address on record in the Department of Civil Service and Payroll at the time that his disciplinary letter was mailed. Ms. Calderon testified that if an employee’s address changes, it is the employee’s duty to notify, her and to provide proof of the new address. Ms. Calderon testified that she never received any notice or request from the Appellant in May or June of 2013 giving her notice of any change in his mailing address.
Disagreeing, the Commission thus found that Mr. Green’s appeal of his termination, filed on November 18, 2013, was timely. In so finding, the Commission reasoned as follows:
The Commission’s earlier order in this matter found that Appellant’s appeal of his termination was premature, not that any subsequent appeal would be untimely. ... During the Commission’s November 18, 2013 meeting, it directed Appellant to file an appeal of his termination. ... Given that the appeal forms and notice of hearing contained Appellant’s LeBoe[u]f address, the commission finds that Appellant no longer resided at the Valentine address, the Appointing Authority had notice of Appellant’s address change, and Appellant did not receive notice of his termination until October 23, 2013.
The commission recognizes that the Appellant should have updated his address with the Appointing Authority, especially after receiving the hand delivered letters containing the wrong address. However, the Appointing Authority had access to Appellant’s cell phone[13] and could have contacted him *174 prior. to proceeding with a pre-termi-nation meeting beyond Mr. Webster’s one attempt to call | ^Appellant’s cell phone on the day of the pre-termination hearing,[14] Alternatively, the Appointing Authority could have erred on the side of caution and continued the pre-termi-nation hearing for a brief time in order to try and contact Appellant. Thus,' the Parties share responsibility for Appellant’s late receipt of the termination notice. However, the impact on Appellant of denying his appeal due to his failure to update his address with the Appointing Authority is a draconian result that would deprive him of an opportunity to present his case. Therefore, the, Commission will consider Appellant’s appeal of his termination as timely,
The Commission’s determination that Mr. Green’s appeal was timely filed was premised on the following three factual findings: (i) Mr. Green moved to a new address before the Pre-Termination Notice and the Termination Notice were mailed; (ii) NORDC had notice of his change of address; and (iii) Mr. Green did not receive the Termination Notice until October 23, 2013. None of these factual findings is manifestly erroneous.
First, the Commission’s finding that Mr. Green moved to a new address before the notices were mailed is supported by his testimony that he moved to the LeBoeuf Street Address around 2010. NORDC’s personnel director, Ms. Calderon, testified that an employee is supposed to give notice of a change of address; however, she acknowledged that NORDC had no protocol in place at that time requiring employees to update their address. She explained that it simply was common courtesy and common sense for employees to update their address.
Although it is undisputed that Mr. Green failed to give notice of his change of address to NORDC, he listed the LeBoeuf Street Address on the appeal forms. | i4Citing this fact as supporting a finding that Mr. Green changed his address before the notices were mailed, the Commission reasoned as follows:
Appellant’s appeal forms relating to his ten-day suspension, emergency suspension,^and termination list his address as 842 LeBoe[u]f Street. This lends credibility to Appellant’s claim that he no longer resides at the Valentine Street address and does not receive mail there. The appeal form for. the 10-day suspension was received by Civil Service on May 30, 2013, one week prior to the notice of Appellant’s emergency suspension and two weeks prior to the date on Appellant’s termination notice.
Given the factual finding that Mr. Green no longer resided at the Valentine Court Address at the time NORDC mailed the notices to that address, it is unnecessary to address the mailbox presumption of receipt of notices mailed to that address.-
Second, the Commission found that NORDC had notice of the' change of address before the'time it mailed the Pre-Termination Notice and the Termination Notice. This‘finding is supported, as the *175 Commission points out, by the following evidence:
[T]he Civil Service Department sent several correspondence to Appellant [Mr. Green] using the LeBoe[u]f- address as early as July 16, 2013. The City Attorney’s office and Mr. Richard at the Appointing Authority [NORDC] were copied on these correspondence.
The Commission’s finding that NORDC had notice of the change of address supports its adoption of the reasoning in the Lems case regarding the Appointing Authority’s duty of good faith in providing notice to an employee.
Finally, the Commission’s finding that Mr. Green did not receive the Termination Notice until October 23, 2013 is supported by Mr. Green’s own testimony and correspondence from his attorney, dated that same date. As the Commission noted, Mr. Green “represented that it was not until October 23, 2013 that he received notice of his termination from the Appointing Authority.” lisAccording to Mr. Green, he first received the Termination Notice as an exhibit attached to NORDC’s first motion for summary disposition, which was filed on October 23, 2013. Mr. Green testified that if he had received the Termination Notice earlier, he would have filed an appeal within thirty days of receipt of that notice. Mr. Green emphasizes that he timely did so following his receipt of the 10-Day Suspension and the 30-Day Emergency Suspension. Moreover, Mr. Green’s attorney’s October 23, 2013 correspondence documents that Mr. Green’s first receipt of the Termination Notice was on that date.[15] Mr. Green filed the appeal of his termination within thirty days of that date; thus, the Commission found it was timely.
Although the Civil Service rules provide that the appeal delays run from the date of the notice of termination provided to the employee, the Civil Service rules also require the Appointing Authority to deliver notice of the- reasons for termination to the employee within five days before the employee is terminated. See Civil Service Rule II, § 4.3 (providing that appeals to the Commission are due thirty calendar days “following the date of the disciplinary letter provided to the employee by the Appointing Authority”); and Civil Service Rule IX, § 1.3 ^(mandating that the appointing authority furnish a terminated employee written notice of the reasons for the termination' “within five (6) working days of the effective date of the action.”). Read together, the Civil Service rules implicitly impose a duty of good faith on the Appointing Authority in providing notice of termination to the employee. See Lewis, supra.
As the Commission Suggests, the reasoning in the Lewis case is instructive. There, the court reasoned that “[although ... [the employer] presented proof that that it deposited the requisite notice in the mail and had technically complied with Civil Service Rule 12.8.1(c),[16] this case is *176 one where a strict adherence to technical rules does not establish that the essential requirements of due process have been met.” Lewis, 2009 WL 2486878 at *3. The same is true here.
Based on the peculiar circumstances presented in this case, we find the Commission was justified in recognizing the due process concerns that would arise from imposing the “draconian” remedy of dismissing the appeal of the termination, especially since Mr. Green was absent from the pre-termination hearing. See Casse v. Sumrall, 547 So.2d 1381, 1385 (La. App. 1st Cir. 1989) (noting that “[exactly what process is due is dependent upon the peculiar facts involved”- and that due process is “a flexible standard which requires such procedural safeguards as a particular situation demands.”). For these reasons, we cannot conclude, as NORDC suggests, that the Commission’s ruling on the timeliness of the appeal was arbitrary and capricious or an abuse of discretion. NORDC’s contention that the | ^Commission erred in finding Mr. Green’s appeal of his termination untimely is thus unpersuasive.

Legal cause

To establish that it had legal cause, the Appointing Authority (here NORDC) was required to prove two factors: (i) that the complained of conduct occurred; and (ii) that the complained of conduct impaired the efficiency of the department. Abbott, 14-0993 at p. 9, 165 So.3d at 198 (citing Harris v. Dep’t of Fire, 08-0514, p. 11 (La.App. 4 Cir. 7/16/08), 990 So.2d 54, 62). The Appointing Authority’s burden of proof, however, is “only by a preponderance of the evidence; it is not beyond a reasonable doubt as in criminal cases.” Douglas v. New Orleans Museum of Art, 400 So.2d 352, 354 (La. App. 4th Cir. 1981); see also Gast v. Dep’t of Police, 13-0781, pp. 3-4 (La.App. 4 Cir. 3/13/14), 137 So.3d 731, 733 (quoting Cure v. Dep’t of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094) (holding that “‘[t]he appointing authority has the burden of proving, by a preponderance of the evidence that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.’ ”).
Here, the complained of conduct was that while on suspension,' Mr. Green continued to use the Behrman Recreation Center, continued to allow other individuals to use the facility, and collected money for such use. The Hearing Examiner found that NORDC met its burden of proof. In so finding, he reasoned in his Report as follows:
It is undisputed that there was an unsanctioned, unauthorizéd event at the Behrman Center on May 25, 2013. It is uncontested that the Appellant was serving a suspension on that date. It is uncontested that someone claiming to be the Appellant’s cousin told Mr. Richard and Mr. Wyatt that the Appellant was running the event, that the | ¶«Appellant had allowed them entry into the Center, and that the Appellant was collecting money for the event. Both Mr. Wyatt and Mr. Richard observed cash on the score table.
The Appellant’s general denial of having any participation in the event, without any other proof whatsoever, was incredible and unavailing. Further, the Hearing Examiner does not find, as the Appellant suggests, that the Appointing Authority had some duty to determine the Appellant’s guilt beyond any doubt. *177 The Appointing Authority was having serious issues with the Appellant’s poor work performance and the resulting safety and security issues at the Center. The Appellant was serving a suspension. The fact that there was an unauthorized event at the Center after hours and that the Appellant was implicated by participants at the event as being responsible was sufficient cause for the Appellant’s dismissal.
Disagreeing, the Commission found that NORDC failed to meet its burden of proof, reasoning as follows:
It is not disputed that, on May 25, 2013 individuals were using the Behr-man facility without authorization. However, the Commission’s inquiry does not end there. The Appointing Authority must establish, by a preponderance of the evidence, that Appellant was responsible for or facilitated this unauthorized use.
The Appointing Authority’s case against Appellant is based upon circumstantial evidence and hearsay. As far as the circumstantial evidence is concerned, witnesses for the Appointing Authority alleged that Appellant did not return the keys to the Behrman facility during his suspension and thus had the opportunity to provide unauthorized access. Further, the Appointing authority alleged that Appellant was a regular participant of basketball games at the facility and coached at least one youth basketball team at the center. This, argues NORDC, shows Appellant had motive to use the Behrman facility during the term of his suspension.
Thus, the Appointing Authority relies on the hearsay testimony of unidentified individuals who, when confronted by a City employee — be it Mr. Wyatt or Mr. Richard — claimed that they had permission to use the facility and pointed to Appellant as the source of that permission. No witness testified that they observed Appellant at the Behrman center on May 25, 2013. One NORDC employee, Makita Johnson, allegedly observed Appellant open the Behrman center doors, but Ms. Johnson did not testify and her statement came through Mr. Wyatt.
Turning to Mr. Green’s case, the Commission noted that Mr. Green’s “testimony rebuts the hearsay testimony.” For these reasons, the Commission concluded that hflNORDC failed to meet its burden of proof to establish that Mr. Green was responsible for the unauthorized use of the Behrman Center on May 25, 2013.
On appeal, NORDC contends that “[t]he Commission erred in disregarding the strong circumstantial evidence that NORDC provided at the Civil Service hearings relative to appellant’s actions that resulted in a 30 day emergency suspension and thereafter his termination.” NORDC further contends that the Commission improperly ignored the evidence and testimony it presented of Ms. Webster, its COO or Deputy Director, and Mr. Richard, its CEO or Director, regarding Mr. Green’s acts of insubordination, “ignoring their directives that he stay away from the centers and that he was not authorized to take any actions or collect any fees on behalf of NORDC while he was out on suspension.” NORDC cites Mr. Richard’s testimony regarding the May 25, 2013, unsanctioned, after-hours basketball tournament. NORDC also cites the fact that when Mr. Smith hand delivered the notices to Mr. Green, he found Mr. Green at a NORDC facility, improperly directing activities, while on suspension.
Mr. Green counters that the Commission properly heard, considered, and reviewed all the evidence that was presented during the hearing. He emphasizes that all *178 of NORDC’s witnesses who testified on the subject of legal cause conceded that they could not prove any of the alleged violations. Thus, he contends that NORDC failed to satisfy its burden of proof as to the factual bases for the disciplinary action taken.
The record reflects, as Mr. Green points out, that none of NORDC’s witnesses could identify the names of any of the people at the gym on May 25, 2013, who told them it was Mr. Green who was responsible for the unauthorized event, with the exception of someone with the first name Brandon. Although Mr. RoWyatt alleged in his May 28, 2013 email that the people at the gym that day told him that the basketball game was an AAU tournament, Mr, Webster could not provide the names of those people.[17] Nor did Mr. Wyatt make an attempt to verify with the AAU whether it was an AAU tournament sanctioned by that organization that was taking' place in the gym.’ Although Mr. Richard testified that he came to the gym that day sometime after 2:00 p.m. with a maintenance crew to prepare the swimming pool, Mr. Richard could not identify by name any of the members of the maintenance crew.[18] Nor did either Mr. Richard or Mr. Wyatt take a picture of the basketball game that they testified was in progress when they arrived.
At the hearing, Mr. Green denied violating the terms of his suspension by being at the gym on May 25, 2013; denied organizing an AAU game with referees; denied opening the gym after hours; and denied collecting money. Mr. Green also denied, when asked by the Hearing Examiner, ever being escorted off NORDC’s premises by the police.[19]
| aiCiting Mr. Green’s direct testimony and noting that NORDC presented only hearsay[20] and circumstantial evidence, the Commission found that NORDC failed to meet its burden of proving the actions on which Mr. Green’s termination was based. Indeed, the Commission noted that “[t]he Appointing Authority seeks to end Appellant’s career with the- City of New Orleans *179 with hearsay and circumstantial evidence,” that Mr. Green’s testimony “rebuts the hearsay testimony,” and that it was “inclined to give greater weight to testimony provided by a witness who is under oath and subject to cross-examination versus hearsay testimony that does not have such procedural safeguards.” In a footnote, the Commission commented that “[t]oo many questions were left unanswered by the Appointing Authority’s witnesses.”[21] We find the record .is devoid of any evidence to justify reversing the Commission’s finding that NORDC failed to prove legal cause by a preponderance of the evidence. We thus find NORDC’s contention that the Commission erred in failing to find it met its burden of proof unpersuasive.
DECREE
For the forgoing reasons, we affirm the decision of the Civil Service Commission of the City of New Orleans.
AFFIRMED

. The NORDC also imposed a third sanction on Mr. Green — a ten-day suspension (the "10-Day Suspension”). The Commission, in its decision, affirmed- the imposition of the 10-Day Suspension. Mr. Green did not appeal the Commission's decision affirming that sanction. Thus, that aspect of the Commission's decision is not before us on appeal.

. According to the NORDC’s personnel records, Mr. Green was hired as a "Recreation Leader” and assigned to work with the Recreation Centers Division of the New Orleans Recreation Department, which became NORDC in 2010. On February 8, 2010, he was promoted to "Recreation Center Manager.”.

. The 10-Day Suspension, which is not at issue on this appeal, was due to Mr. Green’s alleged failure to meet performance standards at the conclusion of a 90-day review period that followed his receipt of a "Needs Improvement” performance rating in his 2012 Performance Appraisal.

. Jerry Smith, NORDC’s Chief Program Officer, was the person who hand delivered the notices, Mr. Smith’s affidavit was introduced at the hearing in this matter. In his affidavit, Mr. Smith attested that on June 5, 2013, Mary Jo-Webster, NORDC’s Deputy Director or Chief Operations Officer ("COO”), gave him two letters to hand deliver to Mr. Green — a notice of emergency suspension, dated May 29, 2013 (the 30-Day Notice), and a notice of pre-termination hearing, dated June 6, 2013 (the Pre-Termination Notice). He further attested that on June 5, 2013, he went to the Behrman Recreation Center, anticipating that Mr. Green "might come by the facility” and that around 6:20 p.m. he hand delivered the two letters to Mr. Green.
Although Mr. Green testified at the hearing that it was only the notices of the 10-Day Suspension and the 30-Day Emergency Suspension that were hand delivered to him by Mr. Smith, Mr. Green, in his appellee brief, acknowledged that the Pre-Termination Notice was hand delivered to him. He states in his brief that "[t]he Pre-termination Letter was hand delivered to the Behrman Recreation Center on June 13, 2013; it was given to Donald Wallace by Jerry Smith who in turn provided it to Corey Green when he arrived,”

. As noted in the Termination Notice, "the pre-termination hearing was convened at 9:00 am; by 9:15 am [Mr. Green] had not arrived at the hearing, at which time Mary-Jo Webster, NORDC GOO called the phone number listed on [his] employment application and left a message. At 9:40 am [Mr. Green] had not appeared or responded to the phone message, at which time the hearing was conducted in [his] absence.”

. Civil Service Rule II, § 4.3 provides that “[a]ppeals to the Commission must be actually received in the Department of Civil Service no later than the close of business on the thirtieth (30th) calendar day following the date of the disciplinary letter provided to the employee by the Appointing Authority.”

. Civil Service Rule IX, § i.3 provides that "[i]n every case of termination ... of any employee in the classified service ,.. within five (5) working days of the effective date of the action, the appointing authority shall furnish the employee and the Personnel Director a statement in writing of the reasons therefore.”

. For ease of discussion, the Hearing Examiner’s and the Commission’s findings as to each of these issues are discussed elsewhere in this opinion.

. Article 10, -section 8 (A) of the Louisiana Constitution of 1974 provides in pertinent part:
No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the appointing authority.

. Article 10, section 12 of the Louisiana Constitution of 1974 provides that ”[t]he final decision of the commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located, upon application filed with the commission within thirty calendar days after its decision becomes final.”

. At the hearing, Ms. Calderon, NORDC’s Personnel Administrator, testified that she could not read the last name of the person named "Brenda” who signed one of the certified mail return receipt green cards. Mr. Green denied having any family or friends that lived at his old address named Brenda.

. See 19 Frank L. Maraist, Nolan J. Edwards, Holt B. Harrison, LA. CIV. L. TREATISE, EVIDENCE AND PROOF § 4.3 (2d ed. *173 2016) (noting that the "mailbox” presumption is that "the addressee received the letter.”).

. The Commission noted that the cell phone number on the "emergency evacuation plan” *174 entered into evidence was the same cell phone number that appeared on all of Mr. Green’s appeal forms.

. The Commission noted the following:
Ms. Webster testified that she was present at the pre-termination meeting and waited for Appellant to appear. When Appellant failed to report to the hearing, Ms. Webster testified that she, along with Mr. Wyatt called the last known number they had on record for Appellant. The phone call went unanswered and Mr. Wyatt, Mr. Smith, Ms. Webster and Mr. Richard proceeded with the hearing.

. Mr. Green’s counsel’s correspondence, which was addressed to. the Civil Service, states as follows:
The pre-termination and notice of termination letters were both mailed via United States Postal Service and both were addressed to 2700 Valentine Court NOLA 70131, an address where my client neither resides nor receives mail.
Mr. Green cannot respond to what he has never received and it would be extremely unfair to allow the 30 days he has to appeal to run from the date of the letter if he has yet to receive it. ...
[W]e will accept these electronic mail communications sent by your office [Civil Service] October 23, 2013 ... which include the Notice of Termination dated June 17, 2013 ... on our client’s behalf.

. Civil Service Rule 12.8.1 (c), cited in Lewis, supra, provided as follows: “[w]ritten notice is considered given ... on the 7th calen *176 dar day after it was mailed with correct postage to the employee’s most recent address furnished in writing or electronically to the agency’s human resource office.”

. Mr. Wyatt documented the events at the gym on May 25, 2013 in an email, dated May 28, 2013, to his supervisor, Ms. Webster. In his email, he noted that when he arrived at the gym at 2:10 p.m,, the basketball games were still in'progress’and no NORDC staff member was on the premises. He, as did Mr. Richard, spoke with Brandon, who was running the scoring table. Brandon informed him that Mr. Green had been there earlier and would be back shortly. Brandon also told him that Mr. Green had organized the basketball games and that-Mr. Green managed one. of the AAU teams, Brandon also told him that Mr, Green would return and lock the building.
In his email, Mr, Wyatt stated that he had made repeated written and verbal requests to Mr. Green that he return his keys to the Behrman Recreation Centers, but Mr. Green had not responded. He stated that Mr. Green had told him he gave the keys'to another employee, but the other employee denied this claim.
Finally, Mr. Wyatt- stated in his email that one of the referees placed a call to Mr. Green. Mr. Wyatt was placed on the phone with Mr. Green. Mr. Green denied any knowledge of the basketball game at the gym and denied having been at the Behrman Center that day. Mr. Green stated that "he was serving a suspension, and had not been at the Behrman Center.”

. Mr. Richard testified that the gym hours on Saturday were 9:00 a.m. to 2:00 p.m, and that he arrived at the gym on May 25, 2013, ’after hours.

. NORDC did not produce either a police report or an item number to substantiate the allegation regarding the police escorting Mr. Green off its premises.

. The Commission noted that hearsay evidence is admissible in administrative proceedings, but that “the weight afforded to such ' evidence is dependent upon its probative value and content."

. Particularly, the Commission commented that NORDC’s witnesses left the following questions unanswered:
Were the unauthorized basketball payers dispersed? If so, who coordinated the dispersal? Were the players provided with refunds? If so, who facilitated the refunds?
Are the records from the AAU reflecting an AAU sanctioned tournament? What happened to the money? Were the police called regarding individuals who were allegedly trespassing at the Behrman center? Why was Ms. Makita Johnson not called or subpoenaed by the Appointing Authority?