STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-114


JUNIUS ROBINSON

VERSUS

CAPITAL STAFFING, ET AL.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 15-06229
CHARLOTTE L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


**REVERSED.**

**Michael B. Miller**
**Attorney at Law**
**P. O. Drawer 1630**
**Crowley, LA 70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
        **Junius Robinson**

**Eric E. Pope**
**Pamela Noya Molnar**
**Blue Williams, L.L.P.**
**3421 N. Causeway Blvd., Suite 900**
**Metairie, LA 70002**
**(504) 831-4091**
**COUNSEL FOR INTERVENOR-APPELLANT:**
        **South East Personnel Leasing, Inc.**

**PICKETT, Judge.**

The employer in this workers' compensation suit appeals a judgment that awarded the employee penalties and attorney fees against it because the employer improperly suspended the employee's indemnity benefits after he failed to attend two medical examination appointments that it scheduled. For the following reasons, we reverse the judgment.

## FACTS

On October 2, 2015, Junius Robinson filed an LDOL 1008 claim, alleging that he was injured while working in the course and scope of his employment with LA Rice Mill, Inc. and Capital Staffing. These two defendants denied employing Mr. Robinson. South East Personnel Leasing, Inc. (South East) filed a petition of intervention in which it averred that Mr. Robinson was its employee and that he was leased to its client, Capital Welding Fabrication, Inc. South East assumed the defense in this matter.

Upon issuing indemnity benefits to Mr. Robinson, South East scheduled an appointment for him to be examined by Dr. Harold Granger on November 30, 2015. Mr. Robinson missed the appointment, and South East rescheduled the appointment for January 11, 2016. Mr. Robinson arrived at the appointment more than forty-five minutes late and was informed that Dr. Granger had left his office for the day.[1] South East suspended Mr. Robinson's indemnity benefits after he missed the second appointment with Dr. Granger but reinstated those benefits on approximately April 14, 2016, after he was examined by Dr. Granger.

In June 2016, Mr. Robinson filed a motion seeking penalties and attorney fees for the suspension of his benefits. After a hearing, the workers' compensation

---

[1] Without objection, Mr. Robinson's counsel entered documentation into evidence which he argued showed that the November appointment was rescheduled because the defendant failed to forward Mr. Robinson's medical records to Dr. Granger's office for the January 11 appointment. South East countered that argument with documentation from Dr. Granger, stating he would have conducted the examination without Mr. Robinson's records if he had been present for the appointment.

judge (WCJ) determined that South East violated the workers' compensation law by suspending Mr. Robinson's benefits without first obtaining an order compelling his attendance at the medical examination and awarded Mr. Robinson $8,000 in penalties and $6,000 in attorney fees.

South East filed a writ application with this court, seeking reversal of the judgment on the basis of four assigned errors. Upon review of the writ application, another panel of this court concluded that the WCJ's judgment at issue herein is a final appealable judgment and converted the writ application to an appeal. *See Junius Robinson v. Capital Staffing*, 16-829 (La.App. 3 Cir. 12/1/16) (unpublished writ decision).

## ASSIGNMENTS OF ERROR

South East urges that the WCJ committed the following errors that warrant reversal of the judgment against it:

1. The lower Court erred in ruling that an Employer is required to obtain an order compelling a Claimant to attend a second medical opinion appointment prior to the suspension of benefits, in light of the amendments to La.R.S. 23:1124, and in awarding penalties and attorney[] fees as a result.

2. The lower Court erred in failing to allow Employer's claims adjuster to testify that the Claimant was served via certified mail when analyzing Employer's compliance with La.R.S. 23:1201.1(A)(4) and (5).

3. The lower Court improperly awarded attorney[] fees and penalties at this intermediate juncture of the proceeding, as litigation is ongoing and the Court's ruling has the potential to subject Employer to additional attorney[] fees and penalties in violation of the [Workers'] Compensation Act.

4. The lower Court erred in the amount of penalties and attorney[] fees it awarded given the amount of legal work involved [in] the filing and appearance at a hearing for one motion[] and [in its assessment of] the maximum penalty prior to the case proceeding to formal hearing.

**DISCUSSION**

South East defends against Mr. Robinson's claims for penalties and attorney fees, arguing that its suspension of Mr. Robinson's benefits without first obtaining an order compelling his attendance at the examination is authorized by La.R.S. 23:1124 in conjunction with La.R.S. 23:1201.1(A)(4) and (5). Prior to the hearing on Mr. Robinson's claims, South East requested that the hearing be converted to a preliminary determination hearing. *See* La.R.S. 23.1201.1(H), which allows employers to obtain preliminary determinations on various disputed issues that arise in the course of litigating workers' compensation claims. Before the hearing began, the WCJ denied South East's request because it failed to seek a preliminary determination as provided in Subsection 1201.1(H) in conjunction with Subsection 1201.1(G).

At the conclusion of the hearing, the WCJ took the matter under advisement. Thereafter, the WCJ issued oral reasons for judgment finding that because South East did not follow the procedure for a preliminary determination hearing set forth in Section 1201.1, Mr. Robinson was entitled to penalties and attorney fees and awarded him $8,000 in penalties and $6,000 in attorney fees. The WCJ did not address South East's defense that it was not responsible for penalties and attorney fees because it followed the procedure set forth in Section 1124 when it suspended Mr. Robinson's benefits.

Mr. Robinson counters South East's defense on two bases: (1) no case has held that an employee's indemnity benefits can be suspended under Section 1124 without a court order compelling his attendance at a medical examination, and (2) South East failed to prove that it followed the procedure outlined by Subsection 1201.1(A)(4). In 2013, the legislature amended Section 1124 and enacted Section 1201.1. *See* Acts 2013, No. 337, § 1. None of the cases cited by Mr. Robinson

3

involved the application of the current version of Section 1124 to claims arising after 2013, when it became effective, and this court has not found any case in which the suspension of indemnity benefits as provided by the current version of Section 1124 was at issue.

### *Effect of 2013 Legislation*

South East argues that Section 1124, as amended in 2013, provides employers two procedural options for suspending benefits when employees fail to attend medical examinations. Specifically, South East asserts that the first option allows employers to suspend benefits if the suspension is done in accordance with the requirements of Subsections 1201.1(A)(4) and (5), but the second option is executed by the WCJ upon the employer's motion to compel an examination. We must analyze these revisions to address the issues presented herein.

Pursuant to La.R.S. 23:1121(A), an employee "shall" submit himself to an examination by a physician selected by his employer. If an employee fails to attend a medical examination, Section 1124 now directs:

> If the employee refuses to submit himself to a medical examination at the behest of the employer or an examination conducted pursuant to R.S. 23:1123, or in anywise obstructs the same, his right to compensation and to take or prosecute any further proceedings under this Chapter may be suspended by the employer or payor until the examination takes place. Such suspension of benefits by the employer or payor shall be made in accordance with the provisions of R.S. 23:1201.1(A)(4) and (5). When the employee has filed a disputed claim, the employer or payor may move for an order to compel the employee to appear for an examination. The employee shall receive at least fourteen days written notice prior to the examination. When a right to compensation is suspended no compensation shall be payable in respect to the period of suspension.

As argued by South East, Section 1124 now provides two procedures for employers to require employees' attendance at medical examinations. The first procedure allows employers to suspend employees' benefits but requires that the suspension be "in accordance with the provisions of" Subsections 1201.1(A)(4)

4

and (5). The second procedure allows employers to obtain an order compelling the employee to attend a medical examination when the employee filed a disputed claim.

Section 1201.1 also provides a procedure for addressing claims arising out of Section 1124. Therefore, we must analyze Section 1124 in light of the procedures set forth in Section 1201.1. We examine these provisions mindful that "When the law is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used." *State v. McKinnies*, 13-1412, p. 7 (La. 10/15/14), 171 So.3d 861, 867. We are also mindful that as a general rule of statutory interpretation, a specific statute controls over a broader, more general statute. *La. Mun. Ass'n v. State*, 04-227 (La. 1/19/05), 893 So.2d 809.

Section 1201.1 is prefaced with:

> A. Upon the first payment of compensation or upon any modification, suspension, termination, or controversion of compensation or medical benefits for any reason, including but not limited to issues of medical causation, compensability of the claim, or issues arising out of R.S. 23:1121, 1124, 1208, and 1226, the employer or payor who has been notified of the claim, shall do all of the following[.]

Subsection (A) then itemizes five notice requirements that employers must satisfy when modifying, suspending, terminating, or controverting benefits. Employers who fail to comply with these provisions subject themselves to penalties and attorney fees. La.R.S. 1201.1(I); (L).

Having reviewed the amendment of Section 1124 and the provisions of Section 1201.1, we agree with South East that Section 1124 provides employers two options for suspending employees' benefits if they fail to attend a scheduled medical examination. To accept Mr. Robinson's argument requires us to ignore

5

the amended language of Section 1124. The clear language of Section 1124 and pertinent provisions of Section 1201.1 confirm this conclusion.

Prior to 2013, Subsection 1124(B) provided the procedure for employers to compel employees' attendance at medical examinations. That procedure now appears in Subsection 1201.1(K)(8)(a)(iv). Additionally, Subsection 1201.1(K)(8)(a)(vii) provides a procedure for employees to have "a suspension of benefits for failure to submit to a medical examination lifted," and Subsection 1201.1(K)(8)(d) (emphasis added) provides:

> If the employee seeking relief pursuant to this Paragraph can show good cause for his refusal, the workers' compensation judge *shall order the suspension . . . lifted* and the payment of any arrearage due. If the employee fails to show good cause for refusal, the workers' compensation judge *shall order the suspension . . . to continue until the employee complies*.

These provisions make no sense if employers cannot suspend benefits without obtaining an order compelling employees to attend medical examinations. Clearly, taken together, the provisions of Sections 1124 and 1201.1 contemplate the suspension of employees' benefits without a hearing. Therefore, if Section 1124 does not allow employers the self-help option of suspending benefits upon complying with Subsections 1201(A)(4) and (5), the 2013 amendment serves no purpose and is rendered meaningless. The same is true for Subsections (K)(8)(a)(vii) and (K)(8)(d).

For these reasons, we conclude that Section 1124 allows employers to unilaterally suspend employees' benefits for failing to attend medical examinations and provides the procedure for doing so and that Section 1201.1 provides the procedure to be followed by employers who choose the second option set forth in Section 1124. *See* Subsection 1201.1(K)(8)(a)(iv).

*Suspension of Benefits under Section 1124*

    *Good Cause for Failure to Attend Medical Examination*

Section 1124 allows the suspension of an employee's benefits if he refuses to submit himself to a medical examination or obstructs such an examination. Mr. Robinson testified at the hearing that he did not attend the first two appointments South East scheduled with Dr. Granger because (1) he lost the notice for the first appointment and forgot the date of that appointment, and (2) he misplaced the notice for the second appointment and could not remember the time of that appointment.

The WCJ did not address this issue; however, La.Code Civ.P. art. 2164 instructs: "[t]he appellate court shall render judgment which is just, legal, and proper upon the record on appeal." Accordingly, we review Mr. Robinson's testimony to determine if it is sufficient to allow us to resolve the issue of whether he refused to submit to the examination or obstructed the examination.

Section 1124 does not define "refuse" or "obstruct." Moreover, because pre-2013 jurisprudence interpreted Section 1124 to require a court order compelling attendance at a medical examination, no jurisprudence addresses the meaning of these terms in this context. [2] Nonetheless, we find guidance in Section 1201.1(K)(8)(d) which entitles an employee who shows "good cause" for refusing to attend a medical examination to have the suspension of his benefits lifted. We have considered Mr. Robinson's reasons for not attending the first two

---

[2] Section 1124(B) previously provided for the suspension of an employee's benefits for failure to attend a medical examination, unless he could "show good cause for his refusal or obstruction of the medical examination." However, because the jurisprudence required employers to obtain an order compelling employees' attendance at such examinations, only one case was found that addressed the issue. In *Gee Cee Group, Inc. v. Thomas*, 12-514 (La.App. 4 Cir. 10/31/12), 103 So.3d 671, the employee who failed to attend a medical examination after being ordered to attend by the court without obtaining a protective order was unreasonable and warranted the suspension of his benefits.

examinations South East scheduled for him with Dr. Granger and find that they do not constitute "good cause" for his failure to attend the two appointments.

### Notice of Suspension

We now turn to Mr. Robinson's contention that South East did not satisfy the requirements of Section 1124 when it suspended his benefits. Section 1124 provides that an employer "may suspend" an employee's benefits for failing to attend a medical examination, but requires that "[s]uch suspension of benefits by the employer . . . shall be made in accordance with the provisions of La.R.S. 23:1201.1(A)(4) and (5)." Subsections 1201.1(A)(4) and (5), respectively, require the employer "to send the 'Notice of Payment, Modification, Suspension, Termination, or Controversion of Compensation and/or Medical Benefits'[3] to the injured employee by certified mail at the address at which the employee is receiving payments of compensation," and to send a copy of that notice "to the office on the same business day as sent to the employee or to his representative." Pursuant to Subsection 1201.1(D), when the employee is represented by counsel, the notice must also be sent by facsimile to counsel. "Proof that the notice was sent to the employee's representative by facsimile shall be prima facie evidence of compliance with Subsection A of this Section." Subsection 1201.1(D).

Mr. Robinson first argues that South East must establish that it satisfied all the provisions of Subsection 1201.1(A) as required by the statute. As discussed above, we find that Section 1124 provides a specific procedure for employers to suspend employees' benefits for failing to attend medical examinations. With respect to the notice required by Subsections 1201.1(A)(4) and (5), Mr. Robinson objected to testimony by Shannon Gibson, the adjuster for South East's third-party

---

[3] "The form of the 'Notice of Payment, Modification, Suspension, Termination, or Controversion of Compensation and/or Medical Benefits' is promulgated by the Office of Workers' Compensation." La.R.S. 23:1201.1(B).

8

administrator, regarding the mailing of notices required by Subsection 1201.1(A)(4) because she could not produce a "green card" to show that the notices had been sent by certified mail. The WCJ sustained the objection, and South East proffered Ms. Gibson's testimony.

A trial court's decision to exclude evidence will not be reversed unless that decision is shown to be an abuse of discretion. *Brandt v. Engle*, 00-3416 (La. 6/29/01), 791 So.2d 614. Some statutes, like La.R.S. 23:1201.1(A)(4), require that notice be sent by certified mail, while others require that notice be sent by certified mail return receipt requested. *See, e.g.,* La.R.S. 47:2153(A)(1)(a); La.Code Crim.P. art. 334. A review of our jurisprudence shows that a "green card" is a "return receipt card." *See, e.g., Green v. New Orleans Recreation Dev. Comm'n*, 16-1122 (La.App. 4 Cir. 5/10/17), 220 So.3d 165; *Marquee Acquisitions, LLC v. T & L Grocery, LLC*, 16-239 (La.App. 1 Cir. 12/22/16), 209 So.3d 182; *Sunbelt-UBI Business Brokers, Inc. v. Lankford*, 03-1477 (La.App. 5 Cir. 5/24/04), 875 So.2d 984; *State v. Washington*, 29-784 (La.App. 2 Cir. 9/26/97), 700 So.2d 1068.

Subsection 1201.1(A)(4) requires that notice be sent by certified mail, not by certified mail return receipt requested. Therefore, to comply with this requirement, South East had to show that it mailed the notice by certified mail, but it did not have to produce a green card. For this reason, we find that Mr. Robinson's objection to Ms. Gibson's testimony bears on the weight to be afforded her testimony, not the admissibility of her testimony, and that the WCJ abused her discretion in excluding the testimony.

We now consider whether the proffered evidence satisfies South East's burden of proof under Subsections 1201.1(A)(4) and (5). Ms. Gibson testified that she did not personally mail the notice by certified mail but that she instructed her staff to mail the notice of suspension to Mr. Robison by certified mail. She also

acknowledged that she did not have the original documentation evidencing that the notice was mailed by certified mail, and although she testified that it was mailed by certified mail and that she had copies of the "green card" in her file, she did not produce any documentation regarding the mailing of the notice in connection with her testimony. Ms. Gibson's self-serving evidence does not satisfy Subsection 1201.1(4). *See Okpalobi v. LeBorne II, L.L.C.*, 12-804 (La.App. 4 Cir. 12/5/12), 106 So.3d 640, *writ denied*, 13-20 (La. 2/22/13), 108 So.3d 773.

South East argues, alternatively, that it satisfied Subsection 1201.1(A)(4) and (5)'s notice requirements because it transmitted the suspension notice as contemplated by Subsection 1201.1(D), which provides that a receipt of transmission of a notice of suspension by facsimile to an employee's counsel constitutes "prima facie evidence of compliance" with Subsection 1201.1(A). Ms. Gibson testified that the notice of suspension was transmitted via facsimile to counsel for Mr. Robinson, and she identified a copy of the notice and facsimile receipt showing transmission of the notice to Mr. Robinson's counsel.

South East introduced these documents at the start of the hearing. Mr. Robinson objected to the documents on the basis that the procedural requirements for suspending Mr. Robinson's benefits are provided by Section 1201.1, not Section 1124. The WCJ admitted the documents subject to that objection. Having determined that Section 1124 in conjunction with Subsection 1201.1(A)(4) and (5) provides the applicable procedure in this matter, we find no basis for excluding this documentary evidence. Ms. Gibson's testimony together with this evidence satisfies the requirements of Subsection 1201.1(D) and, therefore, constitutes prima facie evidence of South East's compliance with Subsection 1201.1(A).

Prima facie evidence is "evidence that is sufficient to establish a given fact"; if that fact is not rebutted or contradicted, the fact is sufficiently proven. *Smith v. Alliance Compressors*, 05-855, p. 7 (La.App. 3 Cir. 2/1/06), 922 So.2d 674, 679; La.Code Evid. art. 308(A). Comment (b) to Article 308 explains that "'prima' facie evidence is generally afforded the weight of a presumption," which shifts the burden of proving the "non-existence of the inferred fact to the opponent." Mr. Robinson did not present any evidence contradicting Ms. Gibson's testimony regarding the transmission of the suspension notice to his counsel by facsimile or the transmission receipt. Accordingly, South East established that it satisfied the requirements of Subsections 1201.1(A)(4) and (5) as required by Section 1124.

Having determined that South East complied with the requirements of La.R.S. 23:1124 and La.R.S. 23:1201.1(4) and (5) when it suspended Mr. Robinson's benefits, we reverse the WCJ's awards of penalties and attorney fees.

### DISPOSITION

The judgment in favor of Junius Robertson and against South East Personnel Leasing, Inc. is reversed. All costs are assessed to Junius Robertson.

**REVERSED.**