JOY COSSICH LOBRANO, Judge.
Lin this civil service case, the defendant/appellant, the New Orleans Police Department (“NOPD”), appeals the August 17, 2015 decision of the Civil Service Commission (“CSC”) vacating the discipline imposed against the plaintiff/appel-lee, Jeremy Wilcox (“Officer Wilcox”), an employee of the NOPD classified as a'Police Officer I, and restoring Officer Wilcox to his former position with all back pay and emoluments. Superintendent Roñal Serpas (“Supt. Serpas”), the appointing authority, terminated Officer Wilcox and suspended him for four (4) days for violating NOPD internal, rules regarding adherence to state law- after Officer Wilcox was arrested in St. Charles Parish for writing a worthless check and received a traffic cita *252 tion in St. John Parish for failing to affix a license plate to the rear of his personal vehicle. The principal issue on appeal is whether the NOPD untimely completed its administrative investigation, such that the discipline imposed against Officer Wilcox was an absolute nullity. For the following reasons, we affirm the decision of the CSC.
|gThe facts leading up to Officer Wilcox’s discipline are as follows. On July 17,2012, while off duty and driving his personal vehicle, Officer Wilcox was stopped by Deputy Patrick Trammel in St. John Parish and was issued a traffic citation for failure to display his license plate.[1] During the traffic stop, it was discovered that there was an outstanding warrant for Officer Wilcox’s arrest from St. Charles Parish dating from 2004 for issuing a worthless check over $500.00, in violation of La. R.S. 14:71.[2] On the same date, Officer Wilcox was placed on emergency suspension by the NOPD. The following day, on July 18, 2012, Officer Wilcox paid the entirety of the amount owed on the outstanding check with funds lent to him by another officer, and the St. Charles Parish District Attorney refused prosecution on the worthless check charge. On July 19, 2012, Officer Wilcox’s suspension was lifted, and he was permitted to return to full duty.
On July 23, 2012, Officer Wilcox’s superior officer, Sergeant Darryl Watson, completed a form DI-1, Initiation of Formal Disciplinary Investigation. Officer Wilcox was accused of two (2) violations of NOPD internal rules regarding ¡.-¡adherence to state law, the first violation relative to display of the license plate and the second violation relative to issuing a.worthless check.[3]
On July 30, 2012, Sergeant Arlen Barnes (“Sergeant Barnes”) of the Public Integrity Bureau began his administrative investigation. Sergeant Barnes did not conduct a criminal investigation.of Office Wilcox’s conduct. Sergeant Barnes became aware at the initiation of his investigation that the charges for issuing a worthless check were refused for prosecution. Subsequently, on September 10, 2012, Officer Wilcox received a nolle prosequi from the St. John Parish traffic court, and on September 20, 2012, he informed Sergeant Barnes that the traffic citation had been dismissed.
*253 On September 24, 2012, Sergeant Barnes ordered Officer Wilcox to provide a recorded statement. On October 10, 2012, Officer Wilcox gave a recorded statement to Sergeant Barnes, in which Officer Wilcox admitted to having removed the license plate and that the license plate was in the trunk 'of his personal vehicle at the time of the traffic stop. Officer Wilcox also admitted in the recorded statement that he had written a check in the amount of $2,505.87 from the account of an air conditioning business where he was previously employed, and that, approximately one year before his arrest, he had learned that there were insufficient funds to pay the check but that he had not satisfied the insufficient |4funds prior to his arrest due to lack of means.. On November 5, 2012, Sergeant Barnes concluded his administrative investigation and completed an administrative investigative report to the .appointing authority.
On April 29, 2013, Officer Wilcox received a disciplinary hearing notification form, which provided him with written notice outlining the sustained charges of misconduct and notifying him that the internal investigation was complete. Officer Wilcox had the opportunity to present facts in mitigation and to explain his conduct at a disciplinary hearing scheduled before Deputy Superintendent Darryl Albert (“Chief Albert”) on May 14, 2013. The hearing was held before Chief Albert on June 18, 2013.
On the same date, June 18, 2013; Officer Wilcox received a disciplinary letter stating that the appointing authority had determined that he violated NOPD internal rules relative to adherence to law (1) by failing to properly display the license plate on his personal vehicle and (2) by issuing a worthless check and taking no action to resolve the issue .after learning of the insufficient funds. For the violation concerning the license plate, Officer Wilcox received a four (4) day suspension. For the violation arising from the worthless check, Supt. Serpas terminated Officer Wilcox’s employment with the NOPD.
• On June 19, 2013, Officer Wilcox timely appealed this termination and suspension to the CSC, arguing that the discipline imposed against him was an absolute nullity because the NOPD failed to complete its administrative investigation within sixty (60) days of its initiation. Following a hearing on May |fi22, 2014, the CSC Hearing Examiner found that the complained of conduct was proven by the appointing authority, and that the relevant conduct would impair faith in and therefore the efficiency of public service, but that the appointing authority had failed to comply with the applicable time limitations for completing the administrative investigation.
On August 17, 2015, the CSC granted Officer Wilcox’s appeal, the discipline was vacated, and Officer Wilcox'was restored to his former position with all back pay and emoluments. This appeal followed.
The CSC has authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const, art. X, § 12; Pope v. New Orleans Police Dep’t, 2004-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause. Gast v. Dep’t of Police, 2013-0781, p. 3 (La.App. 4 Cir. 3/13/14), 137 So.3d 731, 733. The CSC is not charged with such discipline. Id. “[T]he authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty.” Pope, 2004-1888 at p. 5, 903 So.2d at 4.
*254 “The appointing authority has the burden of proving, by a preponderance of the evidence that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.” Cure v. Dep’t of Police, 2007-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dep’t of Police, 2006-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. “The protection of civil, service employees is only against firing (or other discipline) without cause.” Cornelius v. Dep’t of Police, 2007-1257, 2007-1258, p. 7 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724, quoting Fihlman v. New Orleans Police Dep’t, 2000-2360, p. 5 (La.App. 4 Cir. 10/31/01), 797 So.2d 783, 787.
This Court applies the following standard of review to civil service commission cases:
First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the Commission’s decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or .abuse of discretion standard. •Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review.
Russell v. Mosquito Control Bd., 2006-0346, pp. 7-8 (La.App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40 (internal citations omitted).
The issue of whether the GSC erred in its construction and application of the sixty-day rule presents an interpretation of law and is thus subject to a de novo standard of review. Liang v. Dep’t of Police, 2013-1364, pp. 8-9 (La.App. 4 Cir. 8/20/14), 147 So.3d 1221, 1225 (internal citations omitted).
In the appeal before us, the NOPD raises six (6) assignments of error. Officer Wilcox answered the appeal, raising two (2) additional assignments of error. Essentially, all of the NOPD’s assignments of error require this Court to |7determine whether the CSC erred in its construction and application of the sixty-day rule, and accordingly, whether the CSC erred in nullifying the discipline imposed against Officer Wilcox based on its finding that the investigation was untimely completed. We find this issue dispositive of the entire appeal, and as such, we pretermit review of the other issues raised by the parties.[4]
On appeal, the NOPD contends that it is exempt from the requirement to complete its administrative investigation within sixty days where the investigation involves allegations of criminal-activity by the accused officer. According to the NOPD’s argument, the sixty-day rule does not apply to its investigation of Officer Wilcox’s conduct, because Officer Wilcox was accused of violating a criminal statute. Officer Wilcox counters. on appeal that the CSC properly applied the sixty-day rule. He *255 contends that the sixty-day rule is1 tolled while a criminal investigation is in progress and begins to run again upon the conclusion of criminal proceedings. Nevertheless, Officer Wilcox argues that there was no tolling, of the sixty-day period because the NOPD never conducted a criminal investigation of his conduct.
The sixty-day rule is set forth in the Police Officers’ Bill of Rights, specifically in La. R.S. 40:2531(B)(7), which at the time of the NOPD’s investigation provided as follows:
When a formal and written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of. the date the complaint |sis made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board .shall set the matter for hearing and shall provide notice of the hearing to the poliee employee- or law enforcement officer who is under investigation. The police employee or law enforcement officer who is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension -of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the police employee or law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. The investigation shall be considered complete upon notice to thé- police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or uhsustained Complaint. Further, nothing in this •'Paragraph shall limit any investigation of alleged criminal activity.[5]
The Police Officers’ Bill'of Rights mandates that any discipline, imposed without fully complying with the statute’s minimum standards, is an absolute nullity, pursuant to La. R.S. 40:2531(C), which provides as follows:
There shall be no discipline, demotion, dismissal, or adverse action of any,sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer with- ' out complete compliance with the foregoing minimum standards is an absolute nullity.
“This court consistently has held that the NOPD initiates its investigation under La. R.S. 40:2531(B)(7) on the date it initiates the DI-1 form.” Abbott v. New Orleans Police Dep't, 2014-0993, p. 17 (La.App. 4 Cir. 2/11/15), 165 So.3d 191, 202- *256 03. The statute expressly requires that “[t]he investigation shall be considered complete upon notice to [the police officer] ... under investigation of a pre-diseiplin-ary hearing or a determination of an unfounded or unsustained complaint.” La. R.S.'40:2531(B)(7).
The last sentence of subsection (B)(7) setg forth an exception to the sixty-day rule: “nothing in this Paragraph shall limit any investigation of alleged criminal activity.” In O’Hern v. Dep’t of Police, 2013-1416, p. 4 (La.11/8/13), 131 So.3d 29, 31, the Louisiana Supreme Court interpreted this phrase to mean that “nothing must interfere with a criminal investigation.” The Supreme Court emphasized that “[t]he plain language of the statute suggests a criminal investigation is distinct from a civil administrative investigation.” Id. The Court also recognized jurisprudence establishing that “a criminal investigation tolls the time limit for the administrative investigation.” Id., 2013-1416 at p. 5, 131 So.3d at 31. (Internal citations omitted). In O’Hern, the Supreme Court found there was a criminal investigation that preceded an administrative investigation, noting that the Public Integrity Bureau’s investigator initially requested a criminal statement and the defendant was ultimately charged with a criminal violation. Id., 2013-1416 at p. 7, 131 So.3d at 33. The Supreme Court held that the CSC’s characterization of the preliminary investigation as a criminal investigation was not manifestly erroneous or clearly wrong. Id. The Supreme Court thus held that “[b]ecause the statute specifically provides that nothing shall limit an investigation involving alleged criminal activity, the sixty-day period within which to complete an | ^investigation did not begin until the start of the administrative investigation, and was completed within sixty days.” Id.
Based on :the facts of O’Hern, the Supreme Court found “it is clear the administrative investigation did not begin until ... the NOPD informed [the police officer] that his Statement was required to initiate the administrative investigation.” Id., 2013-1416 at p. 4, 131 So.3d at 31. Relying on O’Hern, this Court held in Bell v. Dep’t of Police, 2013-1529, p. 9 (La.App. 4 Cir. 5/21/14), 141 So.3d 871, 876-77, that the sixty-day time period “could not begin to toll until the criminal proceedings were complete,” which in Officer Bell’s case was the nolle prosequi of charges before the traffic court, for driving while intoxicated and hit and run.
' The record before us reflects that no criminal investigation of Officer Wilcox was undertaken by the NOPD. The criminal charges in St. Charles Parish relative to issuing a worthless check were refused for prosecution prior to the NOPD initiating any administrative investigation of Officer Wilcox. The NOPD began its administrative investigation on July 23, 2012 when Officer Wilcox’s superior officer completed the DI-1 form. On September 10, 2012, Officer Wilcox received a nolle prose-qui from the St. John Parish traffic court relative to the license plate violation, and Sergeant Barnes became aware of the traffic citation’s disposition on September 20, 2012. On September 24, 2012, Sergeant Barnes ordered Officer Wilcox to provide a recorded statement. Officer Wilcox did not receive a disciplinary hearing notification form until April 29, 2013.
|nApplying O’Hern to the facts of this case, the CSC concluded that the administrative investigation, even if initiated “in late September, 2012,” exceeded the sixty-day time period mandated for completion under La. R.S. 40:2531(B)(7) and thereby violated one of the minimum standards of the Police. - Officers’ Bill of Rights. The facts in this particular case support the *257 findings of the CSC and we cannot say the CSC was manifestly erroneous or clearly wrong. Moreover, we do not find that the CSC erred in its construction and application of the sixty-day rule. Thus, the discipline imposed by the NOPD is an absolute nullity under La. R.S. 40:2531(C).
Accordingly, for the above reasons, the decision of the CSC granting Officer Wilcox’s appeal, vacating the discipline imposed, and restoring him to his former position with all back pay and emoluments, is affirmed.
AFFIRMED

. The traffic citation issued to Officer Wilcox is not a part of the record. The record contains conflicting facts as to which statute Officer Wilcox was cited for violating, whether the statute was La. R.S. 32:51 or La. R.S. 47:507. La. R.S. 32:51 provides: "No person shall operate, or permit to be operated, any motor vehicle upon the highways of this state unless it is registered with the commissioner, the license tax is paid thereon, and it is operated in accordance with the provisions of this Chapter and other laws of this state.” La. R.S. 47:507 was repealed in 2014. At the time the citation was issued, La. R.S. 47:507(A) required that "a license plate assigned to a ... motor vehicle shall be attached to the rear thereof.”

. La. R.S. 14:71(A)(l)(a) provides: "Issuing worthless checks is the issuing, in exchange for anything of value, whether the exchange is contemporaneous or not, with intent to defraud, of any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time of the issuing that the offender has not sufficient credit with the bank, or other depository for the payment of such check, draft, or order in full upon its presentation.”

.NOPD Operations Manual Rule 2: Moral Conduct, Paragraph 1 — “Adherence to Law,” provides: "Employees shall act in accordance with the constitutions, statutes, ordinances, administrative regulations, and the official interpretations thereof, of the United States, the State of Louisiana, and the City of New Orleans, but when in another jurisdiction shall obey the applicable laws. Neither ignorance of the law, its interpretations, nor failure to be physically arrested and charged, shall be re- . garded as a valid defense against the requirements of this rule.”

. Officer Wilcox contends that the CSC erred in finding that the appointing authority met its burden of proof in establishing that the complained of activity occurred and impaired the efficiency of the public service. As procedural grounds are dispositive of this matter, we find it unnecessary to reach the merits of this issue.

. Subsection (B)(7) was amended' in 2014. The amendments are grammatical in nature and do not change the substance of the law set forth in this subsection.