JUDGE SANDRA CABRINA JENKINS
This is a civil service commission case. Police Officer Kevin Pozzo seeks review of the decision of the Civil Service Commission of the City of New Orleans ("CSC") denying his appeal of the termination of his employment by the New Orleans Police Department (the "NOPD" or the "Appointing Authority"). We find that NOPD'S administrative investigation exceeded the maximum time limitation standards set forth in the Police Officers' Bill of Rights, codified at La. R.S. 40:2531. Accordingly, we conclude that NOPD'S decision to terminate Mr. Pozzo is an absolute nullity under La. R.S. 40:2531(C), and we vacate the decision of the CSC. We further order restoration of all back pay and emoluments to Mr. Pozzo.
FACTUAL AND PROCEDURAL BACKGROUND[1]
Mr. Pozzo, a SWAT Team member, was a 12-year veteran of the NOPD. On June 29, 2017, the NOPD terminated his employment for an alleged violation of the following NOPD rule:
Rule 2: Moral Conduct; Paragraph 1, Adherence to Law to wit: Violation of La. R.S. 14:35.3, Relative to Domestic Abuse.[2]
On December 11, 2015, Mr. Pozzo and his then-fiancé, Melanie Wilson, who shared a residence, were drinking alcoholic beverages at home, and continued to drink afterward at an acquaintance's open house *1151 party.[3] Mr. Pozzo became upset when he observed Ms. Wilson talking with other men at the party. After Mr. Pozzo confronted one of the men, Mr. Pozzo and Ms. Wilson were asked to leave the party. At about 7:00 p.m., they returned to their home. Mr. Pozzo admittedly threw a glass beer bottle against an interior wall, causing it to shatter. What happened next is disputed by the parties.
NOPD investigators alleged that Mr. Pozzo committed a domestic abuse battery upon Ms. Wilson when he "pushed the chair she was seated in causing her to fall to the floor." Investigators also alleged that Mr. Pozzo "aggressively forced the front door against [Ms. Wilson] preventing her from leaving the home."
Mr. Pozzo testified that he "kind of shook" the chair Ms. Wilson was sitting in, but that she did not fall off the chair. He also testified that Ms. Wilson tried to leave through the front door, but he stopped her because he thought she was heavily intoxicated, and he did not want her to drive.
Ms. Wilson, however, initially told NOPD investigators that Mr. Pozzo pushed over the chair in which she was sitting, causing her to fall. She also told investigators that she grabbed her car keys and was leaving to "defuse" the situation. At the CSC hearing, however, Ms. Wilson testified that she recalled Mr. Pozzo putting his hand on the chair in which she was sitting, but did not recall what happened afterward.
Video footage captured by a security camera located inside the residence shows an apparently frightened Ms. Wilson rushing toward the front door, opening it and getting partially outside. The video then shows Mr. Pozzo entering the video frame and attempting to force the door closed while Ms. Wilson was half inside and half outside. Eventually, Ms. Wilson squeezed through the door and went outside.
Although not captured on camera, it is undisputed that once Ms. Wilson got outside of the house, she asked a passing mail carrier to call the police. Mr. Pozzo admitted that when Ms. Wilson was on the phone with the 911 dispatcher, she was crying. A recording of the call reflects that Ms. Wilson was extremely upset, and told the 911 operator, "he hurt me, but I don't need an ambulance."
The following is a chronological timeline of the post-incident events:
• On December 11, 2015, Sergeant Kimberly Hunt ("Sgt. Hunt") of the NOPD's Public Integrity Bureau ("PIB") began an investigation of Mr. Pozzo, examining possible violations of rules pertaining to his professional conduct, performance of duty, and criminal activity.[4]
• On December 11, 2015, Sgt. Hunt and Lt. Darryl Watson of the PIB took a transcribed statement from Ms. Wilson about the incident.
• On December 12, 2015, an arrest warrant was issued for Mr. Pozzo. Mr. Pozzo's commission was revoked and he was suspended from duty.
• On December 13, 2015, Mr. Pozzo was charged with domestic abuse battery.
• On December 14, 2015, Sgt. Hunt issued a form DI-1: "Initiation of Formal Disciplinary Investigation," which placed Mr. Pozzo on notice that his actions gave rise to a possible violation of "Rule 2: Moral Conduct: Paragraph 1: Adherence to *1152 Law," relative to the commission of domestic abuse battery against Melanie Wilson.
• On December 29, 2015, Sgt. Hunt submitted an Incident Report to the Assistant District Attorney's Office asking if the office would be pursuing criminal charges "relative to Simple Battery Domestic Violence."
• On June 15, 2016, Mr. Pozzo's criminal trial was held.
• On June 24, 2016, the judge returned a verdict of not guilty.
• On June 24, 2016, Sgt. Hunt resumed the administrative investigation of the complaint against Mr. Pozzo.
• On August 8, 2016, Mr. Pozzo gave an audiotaped and transcribed interview to Sgt. Hunt.
• On August 12, 2016, Mr. Pozzo was given a "Notice of Accused Law Enforcement Officer Under Investigation of a Pre-Disciplinary Hearing or a Determination of an Unfounded or Unjustified Complaint."
• On August 12, 2016, Sgt. Hunt signed and submitted her written Investigative Report.
• On November 22, 2016, Sgt. Hunt received the transcribed testimony of Ms. Wilson from Mr. Pozzo's criminal trial, and added it to her Investigative Report.
• On December 2, 2016, Lt. Darryl Watson signed Sgt. Hunt's Investigative Report.
• On May 3, 2017, Cmdr. Gwendolyn M. Nolan signed Sgt. Hunt's Investigative Report.
• On May 9, 2017, Dep. Chief Arlinda P. Westbrook signed Sgt. Hunt's Investigative Report.
• On May 9, 2017, Police Supt. Michael S. Harrison signed Sgt. Hunt's Investigative Report.
• On June 28, 2017 a disciplinary hearing was held. In a "Disciplinary Hearing Disposition," the Hearing Officer, the Bureau Commander, and the Superintendent of Police recommended that Mr. Pozzo be dismissed.
• On June 28, 2017, the Superintendent of Police advised Mr. Pozzo in writing that he was found to be in violation of La. R.S. 14:35.3, Domestic Abuse Battery, and that he was being dismissed effective on June 29, 2017.
• On February 22, 2018, a hearing examiner appointed by the CSC presided over an appeal hearing.
• In a written report dated June 26, 2018, the CSC denied Mr. Pozzo's appeal.
Mr. Pozzo timely appealed to this Court.
DISCUSSION
Standard of Review
This Court applies the following standard of review in civil service cases:
First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the CSC's decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate *1153 courts under the manifest error standard of review.
Wilcox v. Dept. of Police , 15-1156, p. 6 (La. App. 4 Cir. 8/10/16), 198 So.3d 250, 254.
"The issue of whether the CSC erred in its construction and application of the sixty-day rule presents an interpretation of law and is thus subject to a de novo standard of review." Id.
In this appeal, Mr. Pozzo raises four assignments of error, three of which relate to the merits of his termination.[5] We find his first assignment of error dispositive - his contention that the administrative investigation in this case violated the sixty-day rule set forth in the Police Officers' Bill of Rights, La. R.S. 40:2531(B)(7), making the imposed discipline an absolute nullity under La. R.S. 40:2531(C).
Police Officers' Bill of Rights
The Police Officers' Bill of Rights specifies that certain "minimum standards shall apply" to an internal departmental investigation of an officer such as Mr. Pozzo, who is the subject of such investigation. La. R.S. 40:2531(B). The particular minimum standard at issue in this appeal is that the investigation of the officer must be completed "within sixty days" of its initiation. La. R.S. 40:2531(B)(7). "The investigation shall be considered complete upon notice to the [police officer] under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint." La. R.S. 40:2531(B)(7).
"There shall be no discipline, demotion, or adverse action of any sort taken against [a police officer] unless the investigation is conducted in accordance with the minimum standards provided for in Sec. 2531." La. R.S. 40:2531(C). And most importantly for the purpose of Mr. Pozzo's appeal, "[a]ny discipline, demotion, or adverse action of any sort whatsoever taken against [a police officer] without complete compliance with the foregoing minimum standards is an absolute nullity ." Id. (emphasis added).
There are, however, three exceptions to the sixty-day time limitation under La. R.S. 40:2531(B)(7). The first is that the appointing authority may petition the CSC for an extension of up to an additional sixty days, and the CSC may grant such a continuance if the appointing authority "has shown good cause" for additional time to complete its investigation. La. R.S. 40:2531(B)(7). The second exception is that the police officer under investigation and the appointing authority may enter "into a written agreement extending the investigation for up to an additional sixty days." Id. The third exception is that the sixty-day limitation "does not apply" when the investigation is one of alleged criminal activity. McMasters v. Dept. of Police , 13-2634, p. 2 (La. 2/28/14), 134 So.3d 1163, 1164 ; La. R.S. 40:2531(B)(7).
Here, only the third exception applies: "[N]othing in this Paragraph shall limit any investigation of alleged criminal activity." In O'Hern v. Dept. of Police , 13-1416, p. 4 (La. 11/8/13), 131 So.3d 29, 31, the Louisiana Supreme Court interpreted this phrase to mean "nothing must interfere with a criminal investigation." Thus, where there is a criminal investigation that precedes the administrative investigation, the criminal investigation tolls the time *1154 limit for the administrative investigation. Id. , 13-1416, p. 5, 131 So.3d at 31. The sixty-day period, therefore, does not begin to toll until the criminal proceedings are complete. Bell v. Dept. of Police , 13-1529, p. 9 (La. App. 4 Cir. 5/21/14), 141 So.3d 871, 876-77.
At trial, Sgt. Hunt testified that after the verdict of not guilty was rendered on June 24, 2016, her administrative investigation began. She agreed that the investigation had to be completed within sixty days, or by August 23, 2016. According to Sgt. Hunt, she "could not add anything after the 60 days." Sgt. Hunt also testified as follows:
Q. Okay. And you cannot, when you turn in that report within 60 days, you have to have all the exhibits attached to it. Would you agree with that by operational policy?"
A. Yeah, I would agree with that.
Sgt. Hunt testified that she completed her written investigative report on August 12, 2016 and signed it on that date. Sgt. Hunt admitted, however, that she later added to her written report a November 22, 2016 transcript of Ms. Wilson's testimony at Mr. Pozzo's criminal trial. She agreed that one of the PIB rules is that within 60 days of the various levels of supervisory review -- which may necessitate corrections, additions, or clarifications -- the final proof at every level must be attained .[6] Sgt. Hunt also agreed that Lt. Darryl Watson signed the report on December 20, 2016; Cmdr. Gwendolyn Nolan signed the report on May 3, 2017; Dep. Chief Arlinda P. Westbrook signed the report on May 9, 2017; and NOPD Chief Harrison signed the report on May 9, 2017. Sgt. Hunt conceded that the signatures of her four supervisors were not added to the written report until after the sixty-day deadline of August 23, 2016.[7]
The Hearing Examiner's Report acknowledged that Sgt. Hunt's original August 12, 2016 report was amended by a later report with an additional exhibit along with her commentary.
Sgt. Hunt included assessment of Ms. [Wilson's] credibility in her report. Included in this assessment were excerpts from Ms. [Wilson's] testimony at [Mr.] Pozzo's criminal trial. Sgt. Hunt admitted that she did not have the transcript until November but claimed to have based her initial assessment of Ms. [Wilson's] credibility at trial on information she received from the Assistant District Attorney assigned to the case. It became clear during the course of the hearing that the report in evidence was not the report that Sgt. Hunt submitted to her supervisors on August 12, 2016. Sgt. Hunt acknowledged that the criminal trial transcript of Ms. [Wilson's] testimony - Exhibit YY - was not included in her report until November. Thus, at some point after August 12, 2016, Sgt. Hunt *1155 amended her report to include the trial excerpts and commentary regarding that testimony. In the prior report, Sgt. Hunt asserts that she made her credibility assessment based on representations by the ADA. Sgt. Hunt asserted that her review of the criminal trial transcript did not change her assessment of Ms. [Wilson's] credibility. (Emphasis added.) (Internal citations omitted.)
The CSC also acknowledged that the criminal trial transcript was added to the Investigative Report after expiration of the sixty-day limitations period. CSC nevertheless concluded that there was no violation of La. R.S. 40:2531(C) as long as the additional testimony was simply disregarded:
In her investigative report, Sgt. Hunt included excerpts from Ms. [Wilson's] testimony at [Mr. Pozzo's] criminal trial. Sgt. Hunt admitted that she did not have the transcript until November but claimed to have based her initial assessment of Ms. [Wilson's] credibility at trial on information she received from the [ADA] assigned to the case. NOPD did not seek to introduce Sgt. Hunt's original report, so it is difficult to assess this claim....
Ultimately, the commission finds that NOPD did complete its investigation into [Mr. Pozzo's] alleged misconduct by August 12, 2016, but later added items to buttress the claims made in the investigative report. Therefore, the Commission finds that any material added after August 12, 2016 is inadmissible with respect to the instant appeal. Had NOPD believed that obtaining the transcript was going to be a problem, it could have requested an extension of the sixty-day deadline. It did not. The commission is concerned that allowing NOPD to add exhibits and details to its investigation following notice to an accused officer would essentially render the sixty-day deadline moot. NOPD own policy requires any and all clarifications or questions regarding investigations be addressed prior to the sixty-day deadline.
The Commission finds that NOPD adhered to the requirements of the Law with the exception of adding elements after August 12, 2016. Therefore, the Commission will disregard any portion of Ms. [Wilson's] trial transcript or Sgt. Hunt's report that references Ms. [Wilson's] testimony during the criminal trial . (Emphasis added).
We share the CSC's concern that allowing NOPD to add exhibits and details to its investigation following notice to an accused officer would essentially render the sixty-day deadline moot. We cannot, however, accept the CSC's contention that the added criminal trial transcript merely "buttressed" the claims made in the Investigative Report, and that any material added after August 12, 2016 was "inadmissible" with respect to Mr. Pozzo's appeal. The Police Officers' Bill of Rights states that "[t]here shall be no discipline, dismissal or adverse action of any sort taken against a police employee or law enforcement unless the investigation is conducted in accordance with the minimum standards provided for in this Section." La. R.S. 40:2531(C) (emphasis added). One of the minimum standards is that each investigation "shall be completed within sixty days. " La. R.S. 40:2531(B)(7) (emphasis added). The Police Officers' Bill of Rights further states that "[a]ny discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a policy employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity." La. R.S. 40:2531(C) (emphasis added). Here, there has been no "strict compliance."
*1156 See Abbott v. New Orleans Police Dept. , 14-0993, pp. 18-19 (La. App. 4 Cir. 2/11/15), 165 So.3d 191, 203.
As the Supreme Court has stated: "The rules of statutory construction require the law to be applied as written if the law is clear and unambiguous and its application does not lead to absurd consequences. Under the circumstances, we believe the law [ La. R.S. 40:2531 ] is clear ...." Gaspard v. City of Abbeville , 13-2817, p. 3 (La. 3/14/14), 136 So.3d 790, 791.
In sum, the Police Officers' Bill of Rights positively prohibits a disciplinary or other adverse action against a police officer when there has not been, as here, complete compliance with the standard for the time-limitation for the completion of a civil service administrative investigation. The provision of Subsection C imposes a penalty for the violation of the minimal standard. Moreover, Subsection C establishes dismissal of the disciplinary action as the remedy for the appointing authority's non-compliance with the minimum standard. We find, therefore, that the investigation by the Appointing Authority of Mr. Pozzo was non-compliant with the minimum standards set forth in La. R.S. 40:2531(B) (7), and the discipline imposed against him is rendered an absolute nullity.
CONCLUSION
Accordingly, we vacate the CSC's denial of the appeal of Mr. Pozzo. We declare all discipline imposed, including termination, by the Appointing Authority, an absolute nullity. We also order the reinstatement of Mr. Pozzo to his prior position along with restoration of all back pay and emoluments in accordance with La. R.S. 49:113.[8]
VACATED AND RENDERED
DYSART, J., DISSENTS, WITH REASONS
DYSART, J., DISSENTS, WITH REASONS
I find that the Police Officers' Bill of Rights was not violated in this instance. For the reasons that follow, I respectfully dissent.
Mr. Pozzo argues that the administrative investigation exceeded the 60 day limit as provided for in La. R.S. 40:2531 B(7), and, therefore, his dismissal should be deemed an absolute nullity per La. R.S. 40:2531 C. The record indicates that the administrative investigation began on June 24, 2016, the same day that Mr. Pozzo was found not guilty of the criminal charge of domestic battery in municipal court. The investigation was concluded on August 12, at which time Mr. Pozzo was notified by phone that charges against him had been sustained. On August 17, he signed a form acknowledging receipt of the Notice to Accused Law Enforcement Officer Under Investigation of a Pre-Disciplinary Hearing or a Determination of an Unfounded or Unsustained Complaint. "The completion of the investigation is defined by statute as occurring 'upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint.' " La. R.S. 40:2531 B(7);
*1157 Abbott v. New Orleans Police Dept., 14-0993, p. 18 (La.App. 4 Cir. 2/11/15), 165 So.3d 191, 203. As August 25, 2016, would have been the 60th day since the commencement of the investigation, the investigation was completed within the 60 day time limit.
Mr. Pozzo argues that because the investigating officer supplemented her PIB report in November 2016 with a transcript of the victim's testimony in municipal court, the disposition should be nullified, as the act of supplementing the report indicated the investigation was not completed timely.
I do not find a basis for appellant's argument.
Sergeant Kimberly Hunt of the NOPD's Public Integrity Bureau (PIB) conducted the investigation and testified at the CSC hearing. She testified in part:
D.A.: When did you find out what her [victim] testimony was at trial?"
Hunt: Immediately after I met with the Assistant District Attorney....
* * *
D.A. "Okay. So it would be fair to say that you found out the contents of Melanie Wilson's testimony at the trial prior to June 24th of 2016.
Hunt: Yes.
Mr. Pozzo argues that Sgt. Hunt did not make her credibility assessment of the victim (finding that she was not credible) until after the date she notified him that the report was complete. However, Sgt. Hunt was specifically asked at the CSC hearing about when she made the credibility call. She testified that she used the information she gathered from the ADA on the date of the criminal trial to make her assessment, i.e., prior to August 12, 2016.
The Commission also disregarded the "supplement" Sgt. Hunt attached to her report. On p. 4 of the disposition the Commission states:
Ultimately, the Commission finds that NOPD did complete its investigation into Appellant's misconduct by August 12, 2016, but later added items to buttress its claims made in the investigative report. Therefore, the Commission finds that any material added after August 12, 2016 is inadmissible with respect to the instant appeal. Had NOPD believed that obtaining the transcript was going to be a problem, it could have requested an extension of the 60-day deadline. It did not. The Commission is concerned that allowing NOPD to add exhibits and details to its investigation following notice to an accused officer would essentially render the 60-day deadline moot. NOPD's own policy requires any and all clarifications or questions regarding investigations be addressed prior to the 60-day deadline.
The Commission finds that NOPD adhered to the requirements of the Law with the exception of adding elements after August 12, 2016. Therefore, the Commission will disregard any portion of Ms. M's trial transcript or Sgt. Hunt's report that references Ms. M's testimony during the criminal trial.
The credibility assessment in Sgt. Hunt's report is found on pp. 33-35 of the PIB report. Although Sgt. Hunt indicates that she reviewed the transcript of the victim's sworn court testimony at the CSC hearing, Sgt. Hunt indicated that she had already formed her opinion that the victim had given contradictory testimony at the criminal trial based on what she learned from the ADA on the date of the criminal trial, June 24, 2016. The 60 day period began to run the next day, June 25, 2016.
Mr. Pozzo also argues that the investigation was not complete because the report had not been signed up the chain of command *1158 all the way to the commission until well outside the 60 day period.
In Abbott, supra, the appellant officers argued that the notice of the pre-disciplinary hearing did not signal the completion of the investigation. This Court rejected the argument citing that the notice itself states that the investigation is now complete and indicates exactly what charges are sustained. The statement on the form that the superintendent or his appointee is the final approving authority does not change the statutory mandate that: "The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint. Nothing in this Paragraph shall limit any investigation of alleged criminal activity." La. R.S. 40:2531 B(7); Abbott, supra.
Thus, I find that the CSC sufficiently protected Mr. Pozzo's rights as a police officer when it disregarded the transcript added to the investigative report outside of the 60 day period. I therefore do not find that his rights were violated or that the discipline imposed should be nullified. I would affirm the ruling of the CSC.

A factual summary of the investigation and trial is offered only to put the pertinent procedural issue in context.

Under Louisiana law, "domestic abuse battery" is defined as "the intentional use of force or violence committed by one household member or family member upon the person of another household member or family member." La. R.S. 14:35.3(A). For purposes of the statute, "household member" includes "any person presently or formerly living in the same residence with the offender and who is involved or has been involved in a sexual or intimate relationship with the offender." La. R.S. 14:35.3(B)(5).

Mr. Pozzo was off duty at the time.

Sgt. Hunt was new to the PIB unit as of December 11, 2015, but had been with the NOPD for 12 years.

Mr. Pozzo's four assignments of error are: (1) the Appointing Authority violated La. R.S. 40:2531, thus rendering this disciplinary action a complete nullity; (2) The Commission erred in not recognizing the bias of the PIB Investigation and their investigators; (3) The Commission erred in dismissing the sworn Civil Service testimony by [Melanie Wilson] as not being credible; and (4) The Commission erred in finding that under the given facts and circumstances, that [Mr. Pozzo] violated La. R.S. 14:35.3.

NOPD Operations Manual: Chapter 52.1.1 governs the steps that must be taken to complete an investigation:
Every investigation must be completed within 60 days of the classification date , unless the extension of 60 days is granted to Civil Service. The Civil Service extension extends the final due date to 120 days from classification date. Within the time frame the investigator's written report accompanied by exhibits to various levels of supervisory review which may necessitate corrections, additions, clarifications, and the final approval at every level, the verbal or written notice of notify law enforcement officers under investigation for pre-disciplinary hearing or determination of sustained or non-sustained complaint must be completed. (Emphasis added).

The original investigative report prepared by Sgt. Hunt is not in the record.

La. R.S. 49:113 provides:
Employees in the state or city civil service, who have been illegally discharged from their employment, as found by the appellate courts, shall be entitled to be paid by the employing agency all salaries and wages withheld during the period of illegal separation, against which amount shall be credited and set-off all wages and salaries earned by the employee in private employment in the period of separation.